Jeryl MOLL, on behalf of herself and all others similarly situated, Plaintiff,

v.

U.S. LIFE TITLE INSURANCE COMPANY OF NEW YORK, Defendant.

Albert ELSER, Robin D. Harlow, Jolene K. Harlow and Brian McGuire on behalf of themselves and all others similarly situated, Plaintiffs,

v.

TITLE USA, INC. f/k/a U.S. Life Title Insurance Company of New York, Defendant.

Nos. 85 Civ. 6866 (PKL), 86 Civ. 4271 (PKL).

United States District Court, S.D. New York.

Dec. 5, 1988.

Paul K. Rooney, New York City, for plaintiffs.

Rogers & Wells, New York City, James N. Benedict, of counsel, for defendant.

## ORDER AND OPINION

LEISURE, District Judge:

This matter is before the Court on defendant's motion to dismiss plaintiffs' consolidated amended complaint ("the consolidated complaint") for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). For the background to this action, *see Moll v. U.S. Title Insurance Co.*, 654 F.Supp. 1012 (S.D.N.Y.1987) (hereinafter *"Moll I"*). In that opinion, this Court dismissed plaintiffs' earlier complaints seeking damages pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1964, § 6409 of the New York Insurance Law, and common law. The Court granted plaintiffs leave to replead their complaints to the extent consistent with that opinion,[1] but having found

---

1. The Court ordered plaintiffs "to merge their amended complaints in the interest of clarity." *Moll I, supra,* at 1016, n. 1.

that the RESPA claims were time barred by the one-year limitation provision of that statute, denied plaintiffs leave to replead those claims. Subsequently, the Court denied plaintiffs' motion for an interlocutory appeal on the RESPA claims. *Moll v. U.S. Life*, [(1987 WL 10026)] (S.D.N.Y. April 21, 1987).

Plaintiffs filed a consolidated complaint on April 16, 1987, again seeking damages pursuant to RICO and common law, as well as N.Y.Gen.Bus.Law § 349 (McKinney 1988). Despite this Court's ruling in *Moll I*, the complaint also included a RESPA claim, plaintiffs urging the Court to reject its prior ruling. Defendant moved to dismiss the consolidated complaint and to strike the RESPA claim. Pending the decision of the Second Circuit in *Beauford v. Helmsley, reh'g en banc argued* (June 13, 1988), the Court reserved judgment on plaintiffs' RICO claims, and requested the parties to submit supplemental briefs for reconsideration of its decision that the time period for bringing a RESPA claim had lapsed. *Moll v. U.S. Life*, (unpublished order) (S.D.N.Y. July 19, 1988). After reviewing these briefs, the Court dismisses plaintiffs' most recent RESPA claim with prejudice.

## I. RECONSIDERATION

■ As a threshold matter, defendant has argued that plaintiffs have not presented a proper basis for reconsideration of the RESPA issue. Defendant relies on the well established principle that, under the "law of the case" doctrine, a court usually adheres to its prior rulings in a case unless it has overlooked " 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result reached by the court." *United States v. International Business Machines Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y.1978) (citing the Court's earlier memorandum in the same case). However, as Judge Learned Hand wrote in *Higgins v. California Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir.1924), "the 'law of the case' does not rigidly bind a court to its former

decisions, but is addressed only to its good sense." Similarly, in *Messenger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912), the Supreme Court declared:

> In the absence of statute the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.

*Id.* at 444, 32 S.Ct. at 740.

Reconsideration is justified where the Court is strongly convinced that a prior ruling was erroneous. As stated in Moore, 1B Federal Practice ¶ 0.404[1], at 407:

> Since a lower federal court cannot by its law of the case bind a higher court having appellate jurisdiction over it, the only sensible thing for a lower federal court ... to do is to set itself right instead of inviting reversal above, when convinced that its law of the case is substantially erroneous.

*See Brunswick Corp. v. Sheridan*, 582 F.2d 175, 177 (2d Cir.1978) (citing above passage).

Although the Court is not *required* by law to reconsider its prior decision concerning the RESPA statute of limitation issue, it is certainly free to do so if it feels that reconsideration is necessary to avoid injustice. It should come as no surprise to defendant that the Court deems the interests of justice best served by such reconsideration here.

## II. STATUTE OF LIMITATIONS OF RESPA

■ RESPA provides that "[a]ny action pursuant to [its] provisions ... may be brought in the United States district court or in any other court of competent jurisdiction, ... within one year from the date of the occurrence of the violation ..." 12 U.S. C. § 2614 (1982 & Supp.1986). In *Moll I*, this Court held that plaintiffs' RESPA claims were time barred since they been filed more than one year after the alleged

violation of the statute occurred. *Moll I, supra,* at 1019–20. Plaintiffs had argued that their claims should have been allowed under either the doctrine of equitable tolling or the doctrine of equitable estoppel. The Court, however, adjudging the one-year RESPA time limitation as a jurisdictional prerequisite not subject to tolling, rejected this argument. Having reviewed the relevant case law, the Court finds that its earlier ruling was improper.

The Court's decision to dismiss the RESPA claims was based exclusively on *Hardin v. City Title & Escrow Co.,* 797 F.2d 1037 (D.C.Cir.1986), which held that "[b]ecause the time limitation contained in § 2614 is an integral part of the same sentence that creates federal and state court jurisdiction, it is reasonable to conclude that Congress intended thereby to create a jurisdictional time limitation." *Id.* at 1039. The District of Columbia Circuit reasoned that, by entitling the section, "JURISDICTION OF COURTS," Pub.L. No. 93–533, § 16, 88 Stat. 1725, 1731 (1974), Congress indicated its intent to create an inflexible jurisdictional bar, rather than an ordinary statute of limitations. The *Hardin* court supported this conclusion by noting that

> [s]ection 2614 is identical in all material respects to 15 U.S.C. § 1640(e), the time limitation applicable to the Truth in Lending Act ["TILA"], 15 U.S.C. § 1601, *et seq.* ... [a] time limitation [which] has also been held to be jurisdictional. *Rust v. Quality Car Corral, Inc.,* 614 F.2d 1118, 1119 (6th Cir.1980).

*Id.* at 1039 (footnote omitted). Comparison with TILA is instructive since, as the Fifth Circuit has observed, "[t]he purposes underlying the Real Estate Settlement Procedures Act are very similar to those of the Truth in Lending Act." *Vega v. First Federal Sav. & Loan Ass'n of Detroit,* 622 F.2d 918, 923 (6th Cir.1980).

However, the District of Columbia Circuit, as well as this Court in its previous opinion in *Moll I,* failed to note that the Sixth Circuit itself has significantly limited *Rust.* As the court explained in *Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037 (6th Cir.1984), *Rust* did not establish that the TILA time limitation was exempt from tolling. Rather, it addressed a very narrow procedural question—namely, whether Fed. R.Civ.P. 6(a), which excludes the actual date of the act or event giving rise to a cause of action from the computation of the limitation period for that action, should be read into § 1640(e) of TILA. *Id.* at 1043. In fact, the Sixth Circuit in *Jones* expressly held that the TILA time limit "is subject to equitable tolling." *Id.*[2]

The D.C. district court opinion affirmed by *Hardin* had not in fact rejected the reasoning of the *Jones* opinion, since the D.C. court found that the plaintiffs had not stated adequate grounds for tolling the limitation period. *Hardin,* 797 F.2d at 1039. However, the District of Columbia Circuit affirmed the lower court's decision on alternative grounds, holding that the doctrines of equitable tolling and equitable estoppel are inapplicable in cases involving RESPA. As already noted, however, the District of Columbia Circuit bolstered its decision by reference to *Rust,* a case which does not truly support the District of Columbia Circuit's holding. Plaintiffs in the present case, like the plaintiffs in *Jones,* have alleged fraudulent conduct by the defendant which might provide a basis for equitable tolling, were that doctrine applicable to the RESPA time limitation. The Court must therefore decide whether, in light of *Jones,* it should still follow *Hardin* in finding the RESPA statute of limitations to be exempt from tolling and estoppel.

As a general rule, the doctrine of equitable tolling is read into every federal statute of limitations. *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). The Second Circuit has declared that this "policy is so strong that it is applicable unless Congress expressly provides to the contrary in clear

---

**2.** 15 U.S.C. § 1640(e), the section of the TILA analogous to the RESPA limitation section, is also titled *Jurisdiction of Courts.* Unlike the District of Columbia Circuit, therefore, the Sixth Circuit did not deem this heading clearly indicative of Congressional intent that the time limitation be exempt from equitable tolling and estoppel.

and unambiguous language." *Atlantic City Electric Co. v. General Electric Co.*, 312 F.2d 236, 241 (2d Cir.1962), *cert. denied*, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed. 2d 411 (1963). As evidenced by the Sixth Circuit's interpretation of TILA's similarly-worded provision, the time limitation in RESPA does not reflect a clear and unambiguous intention that the policy of *Holmberg* be disregarded. Had Congress intended that equitable tolling not apply to RESPA, it certainly could have said so explicitly.

In addition, the Second Circuit has held that if "a statute is remedial in nature, its terms must be construed in *liberal* fashion if the underlying Congressional purpose is to be effectuated." *N.C. Freed Co., Inc. v. Bd. of Governors of Fed. Res. Sys.*, 473 F.2d 1210, 1214 (2d Cir.1973), *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973) (emphasis supplied). This Court is especially concerned that RESPA's purposes will be frustrated if its time limitation provision is read to be a rigid jurisdictional prerequisite, and not as an ordinary statute of limitations. The jurisdictional grant of power by Congress to the federal courts under RESPA is severely undermined if a culpable party need only cover up fraud for one year to avoid the reach of the statute.

In the past, courts have often applied equitable tolling to statutes of limitations to prevent unjust results or to maintain the integrity of the statute. *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir.1986), *appeal dism'd, cert. denied,* —— U.S. ——, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987) (and cases cited therein). "[T]he basic inquiry is whether Congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 427, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1964). Accordingly, the Ninth Circuit has found that an inflexible interpretation of the limitations period in TILA is inconsistent with legislative intent and thus ruled that equitable tolling may be applied. *King, supra* 784 F.2d at 914. The Ninth Circuit stated the following interpretation of § 1640(e), the time limitation provision of TILA:

> [W]e hold that the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the [plaintiff] had reasonable opportunity to discover the fraud ... that form[s] the basis of the action. Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*Id.* at 915. In light of the similar purposes behind TILA and RESPA, this rule seems appropriate for the latter Act as well.

Mindful of these considerations, the Court vacates its earlier judgment regarding RESPA's time limitation period. The Court holds that the one-year limitation period is not an inflexible jurisdictional bar, but is subject to equitable tolling and equitable estoppel in appropriate circumstances. Having made this determination, the Court must establish whether, based upon plaintiffs' allegations, these doctrines could conceivably be applied in the present action.

The function of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). For purposes of such a motion, the Court deems true all the allegations in the complaint. *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed. 2d 1030 (1964); *Montauk–Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 94 (2d Cir.1986). Furthermore, the Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote and citations omitted). Finally, the allegations in the complaint must be liberally construed.

*Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). With these principles in mind, the Court turns to plaintiffs' equitable tolling and equitable estoppel allegations.

## III. EQUITABLE TOLLING

The question of when a limitations period begins to run on a federal statute is governed by federal law. *Rawlings v. Ray,* 312 U.S. 96, 98, 61 S.Ct. 473, 474, 85 L.Ed. 605 (1941); *Kaiser v. Cahn,* 510 F.2d 282, 285 (2d Cir.1974); *Long Island Lighting Co. v. Transamerica Delaval Inc.,* 646 F.Supp. 1442, 1454 (S.D.N.Y.1986). In this case the Court therefore applies the equitable tolling and estoppel doctrines as developed in the federal courts.

The purpose of the federal equitable tolling doctrine is to prevent a defendant from "concealing a fraud, or ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it ..." *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1875). As the Second Circuit declared in *Barrett v. United States,* 689 F.2d 324, 327 (2d Cir. 1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983), "any plaintiff who is blamelessly ignorant of the existence or cause of his injury should be accorded the benefits of the more liberal [equitable tolling] standard."

Although the doctrine was developed in the context of fraud claims, it has been extended to "cases alleging causes of action other than fraud where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action." *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985).

Plaintiffs' RESPA claim is not *per se* a claim for fraud. *Moll I, supra,* at 1027, 1029 n. 6. Essential to any fraud claim is the misrepresentation of a material fact or the failure to disclose a material fact by one who has a duty to make such disclosure. Section 8 of RESPA, the provision

on which plaintiffs' claim is based, prohibits the payment of kickbacks for the referral of title insurance business. 12 U.S.C. § 2607 (1982 & Supp.1986). The section does not, however, create a duty to disclose such payments, and may be violated even where no misrepresentations have been made.

■ Where a defendant fraudulently conceals a non-fraud cause of action, the statute is tolled until plaintiff, exercising due diligence, should have discovered the claim. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 461 (2d Cir.1974). In general,

> [o]nce it appears that the statute of limitations has run, the *plaintiff* must sustain the burden of showing not merely that he failed to discover his cause of action prior to the running of the statute of limitations, but also that he exercised due diligence and that some affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence. .

*Id.* (emphasis in original); *see also Ingenito v. Bermec Corp.,* 441 F.Supp. 525, 553 n. 26 (S.D.N.Y.1977).

Thus, the present plaintiffs must demonstrate both fraudulent concealment and due diligence in order to toll the RESPA statute of limitations.

## A. FRAUDULENT CONCEALMENT

■ Conclusory allegations of fraudulent concealment are not sufficient to withstand a motion to dismiss. Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fraudulent concealment claims come within the ambit of Rule 9(b). *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 90 (2d Cir.1983). Plaintiffs consequently must plead with particularity fraudulent conduct which could justify tolling the statute of limitations.

There are two ways in which plaintiffs' pleadings may properly allege fraudulent concealment: "by showing either that the defendant took affirmative steps to prevent

the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988).

The distinction between affirmative acts of concealment and wrongs which are inherently self-concealing is not always clearcut. In *Hobson v. Wilson*, 737 F.2d 1 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), the District of Columbia Circuit offered a thoughtful explanation of the two categories of fraudulent concealment:

> [A] defendant who contrives to commit a wrong in such a manner as to conceal the very existence of a cause of action, and who misleads plaintiff in the course of committing the wrong, may be found to have concealed the wrong. This ... principle distinguishes between acts that are self-concealing (such as frauds) and acts where, absent a subsequent act of concealment, only the perpetrator, but not the fact that a cause of action might exist, would be unknown (such as burglary). In the former case, concealment is established by the nature of the act; in the latter case, additional acts of concealment are required to trigger the tolling doctrine.

*Id.* at 33.

The Court further explained that "[t]he difference in the two categories, as we see it, is whether the deception, misrepresentation, trick or contrivance is a necessary step in carrying out the illegal act, or whether it is separate from the illegal act and intended only to cover up the act." *Id.* at 33, n. 102. The Court posited two hypothetical situations to illustrate its analysis. A thief who steals an antique vase and replaces it with a fake engages in an affirmative act of concealment. This is so because the illegal act of theft is complete at the moment the vase is taken. The act of replacement is not a necessary component of the theft, but is instead a separate act intended to conceal the theft. On the other hand, when a person knowingly sells a worthless vase as a valuable antique, he engages in a self-concealing wrong. The deception is vital to his scheme, for without it he cannot accomplish his illicit purpose. *Id.* at 33–34 n. 102.

Certainly, this is not a case where "absent a *subsequent* act of concealment, only the perpetrator, but not the fact that a cause of action might exist, would be unknown." *Id.* at 33 (emphasis added). Kickback payments are by their very nature transactions which take place without the knowledge of those victimized by them. Unlike thefts, they may remain hidden even if those involved do not undertake subsequent acts of concealment. Consequently, if the fraudulent concealment doctrine is to apply at all, the wrong alleged must represent a self-concealing wrong.

The specific statutory violation at issue involves the payment of compensation to attorneys representing a purchaser in exchange for the referral of title insurance business.[3] Such conduct appears at first glance to be a classic example of a self-concealing wrong—secrecy is vital to the scheme, since the kickback is surreptitiously included in the costs of settlement services, generally resulting in a greater expense for the purchaser. Obviously, if the purchaser knew of the existence of the illicit arrangements, the payments would not be permitted. Concealment of the payments is thus not merely an act separate from the wrong, but is an integral part of that wrong.[4]

However, plaintiffs must allege more than that defendant failed to disclose the

---

**3.** Defendant concedes that payments were made to plaintiffs' attorneys, James N. Feeney and Ronald M. Kahn, but contends that these payments represented legitimate compensation for services rendered US Life during the closing, rather than illegal kickbacks for the referral of business.

**4.** It is true that, in the present case, US Life could not have deviated from the rate schedules filed with the New York Insurance Department. N.Y. Ins. Law § 6409 (McKinney 1985). As a result, plaintiffs did not pay more for their title insurance than they would have had the alleged illegal payments not been made. Nevertheless, US Life would still have had a strong interest in keeping any illegal payments secret. The fact that the payment for referral of business does not result in an increase in the charge made for

existence of the payments. "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Wood v. Carpenter,* 101 U.S. (11 Otto) 135, 143, 25 L.Ed. 807 (1879); *see also Hobson, supra,* at 33–34. Plaintiffs must show "some misleading, deceptive or otherwise contrived action or scheme, *in the course of committing the wrong,* that is designed to mask the existence of a cause of action." *Id.* at 34. (emphasis in original). The Court therefore turns to plaintiffs' specific allegations.

Plaintiffs' fraudulent concealment claim rests on three grounds: (i) US Life failed to disclose to plaintiffs the payments made to plaintiffs' attorneys Feeney and Kahn, ¶ 47; (ii) US Life concealed the scheme by "corrupting" Feeney, sending the "kickback" checks to Feeney and Kahn, requiring title insurance payments to be made through Heritage Abstract Corporation ("Heritage Abstract"), and issuing a brochure of premium charges which did not reveal the ultimate disposition of those charges. ¶¶ 54, 55, 58, 145, 150; and (iii) Feeney and Kahn, acting as agents of US Life, and Timothy J. Miller, the President of Heritage Abstract, made entries on the HUD–1 form and on the bill presented plaintiffs at closing which misrepresented the ultimate destination of the premium payments. ¶¶ 76, 95, 114, 133.

### 1. US LIFE'S FAILURE TO DISCLOSE THE PAYMENTS

■ The first of these grounds may be quickly dismissed. Although US Life did not reveal to plaintiffs how their premiums would be distributed, it had no obligation to do so. As this Court pointed out in *Moll I,* US Life owed no fiduciary duty to plaintiffs. *Moll I, supra,* at 1029. Absent a fiduciary duty on the part of US Life, its failure to disclose the payments made to plaintiffs' attorneys is "mere silence," insufficient to establish fraudulent concealment.

the settlement service is irrelevant in determining whether the payment is prohibited by RESPA. 24 C.F.R. § 3500.14(d) (1976). Thus, US Life would have needed to conceal the existence

### 2. US LIFE'S ALLEGED ACTS OF CONCEALMENT

■ Plaintiffs' claim that US Life directly concealed the violation is also without merit. US Life's alleged payment of "kickback" checks to Feeney and Kahn and consequent "corruption" of those attorneys are not *acts of deception in the course of committing the wrong*—they are *the wrong itself.* In and of themselves, they are not deceptive actions, since plaintiffs allege neither that US Life directly misled plaintiffs regarding their title insurance premiums, nor that they conspired with the attorneys to mislead plaintiffs regarding such payments.

■ Nor does the allegation that US Life required title premiums to be paid through Heritage Abstract support a claim of fraudulent concealment. As US Life points out, whether US Life directly received the initial payment, or authorized Heritage Abstract, acting as US Life's representative at the closing, to receive it, is relatively unimportant. The key issue is who ultimately received the premium. If US Life had received the payment directly, and subsequently rebated part of it to plaintiffs' attorneys, plaintiffs would not have been any more aware of the ultimate disposition of the funds. The fact that the payments were made through Heritage Abstract is not, therefore, an inherently deceptive act.

■ With regard to the brochure published by defendant, that document merely stated the rates that US Life was required by law to charge. *See* Exhibit 3 to Plaintiffs' First Consolidated Complaint. It contained no representations as to the ultimate distribution of the insurance premium. Moreover, plaintiffs do not even allege that they ever saw this brochure, much less that they were deceived by it.

### 3. ALLEGED MISREPRESENTATIONS OF US LIFE'S AGENTS

■ Plaintiffs' final claim is that Feeney, Kahn and Miller, acting as agents of

of the payments to prevent plaintiffs from learning of its civil liability to them under 12 U.S.C. § 2607(d) (1982 & Supp.1986).

US Life, prepared HUD–1 forms and insurance premium bills which falsely stated that US Life would receive the full premium charged for the title insurance. Misrepresentations as to the disposition of the title insurance premiums are certainly of the type which would justify tolling the statute of limitations.

The basis of these allegations is as follows. Plaintiffs received a standard form of the United States Department of Housing and Urban Development ("HUD–1") at their closings listing the cost of various services to be paid by the purchasers. On line 1108 of HUD–1, under the heading *Title Charges,* there appear the words: "Title insurance to." Plaintiffs allege that their attorneys, Feeney and Kahn, designated US Life as the recipient of the title insurance premium on the HUD–1, and listed as the amount of that premium a number far in excess of the amount US Life actually received. In the case of plaintiff Moll, for example, the amount listed on line 1108 of the HUD–1 was $578.00. *See* Exhibit 4 to Plaintiffs First Consolidated Complaint. Of this amount, $165.00 was allegedly retained by Heritage Abstract, $161.40 was forwarded to US Life, and $251.60 was paid to Feeney, Moll's attorney. This distribution was not revealed on the HUD–1 form. Plaintiff Moll also received a bill at the closing for title services from Heritage Abstract, representing US Life, which included $578.00 in title charges as well as $372.50 in recording fees. The heading to this bill read: Due The Company For Search And Examination Of Title to Premises. The bill broke down Moll's title charges as follows: $368.00 as a mortgage title premium; $170.00 as a fee title premium; and $40.00 for departmental searches. Once again, the bill failed to disclose that $251.60 of the premium payments was to be paid to Feeney.

Plaintiffs characterize these entries by Miller, Feeney and Kahn, allegedly acting as agents of US Life, as misrepresentations which concealed the illegal payments from plaintiffs. For its part, US Life claims that the HUD–1 and the bill from Heritage Abstract were not in fact deceptive, but correctly listed the premiums which were charged plaintiffs. The Court agrees with US Life's characterization.

The regulations relating to the HUD–1 form merely require that the person filling out the form "[e]nter the total charge for title insurance" on line 1108. 24 C.F.R. Part 3500, Appendix A (1976). This is precisely what plaintiffs' attorneys did. For plaintiff Moll, $578.00 represented the total, non-negotiable charge for title insurance. Similarly, the bill presented plaintiffs by Heritage Abstract merely stated the charges owed by plaintiffs to the company, not the ultimate disposition of those charges.

In *Moll I,* this Court specifically acknowledged plaintiffs' allegations that attorney Feeney filled out plaintiff Moll's HUD–1 statement and that Miller prepared the Heritage Abstract bill. *Id.* at 1016. Nevertheless, the Court found these actions insufficient to constitute a misrepresentation by US Life or any of its agents regarding ultimate disposition of the premium proceeds. *Id.* at 1027.[5] Despite this clear indication in the *Moll I* opinion that further allegations would be necessary for a proper misrepresentation claim, plaintiffs have not remedied the deficiencies of their earlier complaint. Instead, they again rely on the entries made by Miller and Feeney. The Court's reasoning in its earlier opinion is thus equally applicable with regard to the consolidated complaint now before it:

> Nowhere in their complaints do plaintiffs allege that US Life *represented* that it was " 'accepting' (*i.e.,* retaining for its own account) the premium charged." The complaints do state that US Life charged the plaintiffs a certain premium for their title insurance, however, plaintiffs fail completely to plead any facts

---

5. Since the Court did not reach the equitable tolling issue in *Moll I,* its misrepresentation analysis was directed solely at plaintiffs' common law fraud claim. Nevertheless, that analysis is directly applicable to plaintiffs' equitable tolling arguments. As noted above, fraudulent concealment, similar to fraudulent misrepresentation, requires some affirmative deceit, trick, or contrivance. *See Wood v. Carpenter, supra,* 101 U.S. at 143; *Hobson, supra,* at 33–34.

indicating whether defendant or any agent of defendant ever discussed with plaintiffs what US Life would do with the premiums.

654 F.Supp. at 1027 (citations omitted) (emphasis in original).[6] Absent such allegations, plaintiffs have not shown any "trick or contrivance intended to exclude suspicion and prevent inquiry." *Wood v. Carpenter, supra,* 101 U.S. at 143. As a result, plaintiffs' allegations, as a matter of law, are inadequate to justify tolling the statute of limitations.

## B. DUE DILIGENCE

■ Moreover, plaintiffs have not satisfied their duty of due diligence: "A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it." *Id.* 101 U.S. at 140. Plaintiffs had the means of discovery in their power. They could have asked US Life or their attorneys how their title insurance premiums were being distributed. They could have requested an explanation of the bill prepared by Heritage Abstract. They could have asked their attorneys if they were performing any duties for US Life at the closings. They could have inquired whether other title insurance companies would have been better suited to their needs. Plaintiffs do not allege that they did any of these things, nor do they allege that any agents of US Life made any misrepresentations to them regarding these matters.

■ Although plaintiffs were certainly justified in relying to a large extent on their counsel to protect their interests, the mere fact that they were represented does not free them from their duty diligently to keep themselves informed. Since plaintiffs' fraudulent concealment claim, in essence, alleges only that defendant did not

voluntarily disclose to plaintiffs the existence of the payments, it is insufficient to toll the limitations period.

## IV. EQUITABLE ESTOPPEL

■ Finally, plaintiffs claim that defendant should be barred from asserting a statute of limitations defense under the equitable estoppel doctrine. This claim is clearly without merit. The Second Circuit has indicated that,

[u]nlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the *plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit.*

*Cerbone, supra,* at 49–50 (2d Cir.1985) (emphasis added).

Plaintiffs have not alleged that defendant caused them to delay in bringing suit on a known cause of action. On the contrary, plaintiffs repeatedly emphasize that they did not discover the alleged RESPA violations until long after the limitations period had expired. ¶¶ 147, 149. Equitable estoppel is therefore not appropriate in this case.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted as to the RESPA claim. As the present motion represents essentially the third time this Court has considered plaintiffs' RESPA arguments, and plaintiffs have by now had ample opportunity to correct the deficiencies in their pleadings, the RESPA claim is dismissed with prejudice. *See Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) ("[A] plaintiff who has once taken advantage of the opportunity to amend his complaint in light of defects to which his atten-

---

6. Indeed, were this Court to hold that entries on HUD–1 forms, standing alone, constituted evidence of fraudulent concealment, the RESPA statute of limitations would have little meaning. Section 4 of RESPA, 12 U.S.C. § 2603, requires that HUD–1 forms be used in all transactions in the United States involving federally related mortgage loans. If fraudulent concealment were established whenever a title insurance

company failed to disclose the ultimate disposition of premiums on an HUD–1 form, equitable tolling would be applicable for virtually all RESPA claims. Had Congress intended this result, it is unlikely that it would have enacted a general rule requiring that RESPA claims be brought within a year of the occurrence of the violation.

tion has been drawn should be able to achieve some clarity and precision, and may properly be denied yet another opportunity to amend ...""). The Court continues to reserve judgment on plaintiffs' RICO claims, pending resolution by the Second Circuit of *Beauford v. Helmsley, supra,* for the reasons given in this Court's July 19, 1988 opinion. Since plaintiffs' common law claims are pendent state law claims which provide no independent basis for federal jurisdiction, the Court will also reserve judgment on defendants' motion to dismiss those claims until such time as it determines whether to dismiss the RICO claims.

SO ORDERED.