**Joel BLAZ and Frances Lauer, Plaintiffs,**

**v.**

**GALEN HOSPITAL ILLINOIS, INC. d/b/a Michael Reese Hospital and Medical Center, and Arthur B. Schneider, M.D., Defendants.**

**No. 96 C 0091.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 22, 1997.

Martin H. Freeman, Barbara E. Hirsch, Freeman & Jenner, P.C., Bethesda, MD, E. Cooper Brown, H.W. Cummins, Cummins & Brown, Takoma Park, MD, for Plaintiff.

Charles R. Krikorian, William P. Dorr, Hugh L. Moore, David C. Hall, Jason A.

Parson, Lord, Bissell & Brook, Chicago, IL, Barney Cohen, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Defendant, Michael Reese Hospital and Medical Center ("Michael Reese"), used X-ray therapy to treat approximately 5,000 patients for certain benign conditions of the head and neck during a thirty year period from 1930 to early 1960. Plaintiff, Joel Blaz, received such treatment at Michael Reese for infected tonsils and adenoids during a three week period in late 1947 and early 1948 while Mr. Blaz was a young child. Based on that treatment, Mr. Blaz has brought various claims alleging medical malpractice, absence of informed consent, negligence, failure to warn, fraud, and loss of consortium. The defendants seek summary judgment based on the statute of limitations. The motion is denied.

### Background

In 1974, Michael Reese embarked on the Thyroid Follow–Up Project (the "Project") in an effort to gather scientific data and conduct research involving those individuals who were subjected to the X-ray therapy. Defendant Arthur Schneider became the director of the Project in 1977. As part of the Project, Michael Reese sent a letter to Mr. Blaz on February 3, 1975. That letter informed Mr. Blaz of the type of treatment he received and that he was at an increased risk of developing tumors of the thyroid gland. Def. Ex. A–20. The letter offered the use of diagnostic facilities at Michael Reese at no charge or suggested that individuals take the letter to their own physician for any possible treatment.

At the time this letter was sent to Mr. Blaz,[1] he was residing in Florida and unable to return to Michael Reese for treatment. He did visit Dr. Gerald Levey, a physician at the University Of Miami Hospital, on February 19, 1975. Dr. Levey conducted a thyroid examination and found it to be normal. Dr. Levey forwarded the results of his examination to the Project.

Mr. Blaz claims that his next contact from Michael Reese came from a woman associated with the Project. She called him sometime between February and July, 1976. Mr. Blaz cannot recall the name or job title of this woman, although he speculates that her name might have been Margaret Arnold.[2] He says that this woman told him that he had received radiation as a baby or a child in the neck area near his thyroid and that she was calling to alert him to the possibility of problems in his thyroid due to this radiation. She suggested that he have his thyroid evaluated and asked him if he wanted to be treated at Michael Reese. Mr. Blaz testified at his deposition that she assured him that it was only his thyroid that could become a problem as a result of the radiation treatment. Mr. Blaz declined to be treated at Michael Reese after the woman informed him that he would have to pay the costs of his travel and treatment.

Mr. Blaz had no further contact with anybody affiliated with Michael Reese until April, 1981. At that time he received a questionnaire along with a letter from Dr. Schneider explaining that the Project was seeking to collect information regarding the long-term effects of childhood irradiation. The questionnaire principally contained questions pertaining to treatment and examination of the thyroid gland, although one question asked about the existence of any other

1. Some dispute exists about whether Mr. Blaz actually received the February, 1975 letter from Michael Reese. Mr. Blaz, after examining the letter, testified in his deposition that he had never received nor seen this letter. Blaz Dep. of 7/9/96 at 9–10. In a subsequent affidavit, Mr. Blaz states that, after reviewing Michael Reese's file about himself, he recalls receiving the letter. Blaz Aff. of 1/23/97, ¶ 4–5. Ordinarily, a subsequent affidavit cannot be used to contradict deposition testimony in order to create an issue of fact. *Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir.1996). Mr. Blaz does not appear to

be using the issue of receipt of this letter to create an issue of fact. In light of other documentary evidence in the record which clearly demonstrates that Mr. Blaz did receive and act on this letter, such as his visit to a physician in Miami for a thyroid examination two weeks after the date of the letter, I will accept and consider his affidavit on this matter.

2. Ms. Arnold was the Project Manager of the Thyroid Project.

tumors. Mr. Blaz did not complete the questionnaire or return it to the Project, nor did he have any contact with anyone at Michael Reese or with Dr. Schneider concerning these materials.

Prior to any contact Michael Reese had with Mr. Blaz regarding his radiation exposure, he developed a tumor of his parotid gland.[3] In 1974 he underwent surgery to remove this benign tumor. Mr. Blaz suffered a recurrence of this tumor in 1987, and, in the same year, other tumors developed in nearby physical areas.[4] Despite his long history of tumors, Mr. Blaz did not file suit alleging a link between his radiation exposure and his medical problems until January 4, 1996, within two years after his dentist concluded that the fact that a non-decayed tooth crumbled was attributable to his childhood radiation treatment.

Based on Mr. Blaz' delay in filing suit, the defendants contend that his action is time barred. Mr. Blaz argues that his case falls within one of the two exceptions to the statute of repose,[5] fraudulent concealment or equitable estoppel.

The first issue concerns the appropriate statute of limitations. The parties agree that in 1948, the time when plaintiff received his last treatment from Michael Reese Hospital, Illinois recognized no discovery rule, nor did it have a statute of repose. If that statute were applicable, Mr. Blaz' claims for injuries were barred two years after he became 21, that is, in March, 1970. In June, 1970, after this period expired, the Illinois Supreme Court adopted a discovery rule in medical malpractice cases, deciding that a cause of action accrues only when the person knows or reasonably should know of his injury. *Lipsey v. Michael Reese Hospital,* 46 Ill.2d 32, 38, 262 N.E.2d 450, 454 (1970). Under this rule, Mr. Blaz' action was not extinguished because it had not yet accrued.

Although defendants argue that Mr. Blaz' action had been previously extinguished, the Illinois Supreme Court has held otherwise in a case involving an action against the same hospital for injuries also alleged to have been inflicted by the hospital's practice during the 1940's of treating tonsilitis with radiation. *Moore v. Jackson Park Hospital,* 95 Ill.2d 223, 69 Ill.Dec. 191, 447 N.E.2d 408 (1983) (consolidating, for decision, actions against Michael Reese Hospital with one against another hospital). In that case, the court found permissible actions brought in 1980 and 1978 for injuries resulting from X-ray treatments in the early 1940's.

Although *Lipsey* did not place an outside limit on discovery, the Illinois legislature subsequently enacted a statute of repose, which placed a limit on the time a plaintiff could sue after "the act or omission or occurrence alleged in such action to have been the cause of such injury." 735 ILCS 5/13–212(a) (1993). The original time limit was five years, which was shortened to four years in 1976. Ill.Rev.Stat. ch. 83, ¶ 22.1 (1976). The four-year time limit remains in effect. 735 ILCS 5/13–212(a) (1993). In *Moore v. Jackson Park Hospital,* the Illinois Supreme Court held that the four-year repose bar imposed by the 1976 act could not bar instantaniously actions that were filed within two years of discovery. In *Mega v. Holy Cross Hospital,* 111 Ill.2d 416, 95 Ill.Dec. 812, 490 N.E.2d 665 (1986), the court held that the reasonable period allowed for filing beyond the 1976 act could not exceed four years.

Based on the 1976 legislation and *Mega,* defendants argue that Mr. Blaz' action was barred at least in 1980, four years after the enactment of the statute of repose. Mr. Blaz argues that his action is still timely because of two exceptions to the four-year time limit: where there has been fraudulent concealment or based on principles of equitable estoppel.

3. The parotid gland is a type of salivary gland and is located under the jawbone near the ear.

4. Although Mr. Blaz' medical history is more extensive than described here, for purposes of this motion, additional background concerning his very recent medical history is unnecessary.

5. A statute of repose is similar to a statute of limitations because they both bar stale claims. A statute of repose is different, however, because it bars a stale cause of action whether or not the plaintiff has discovered it. *Franklin v. Cernovich,* 287 Ill.App.3d 776, 223 Ill.Dec. 154, 156, 679 N.E.2d 98, 100 (3rd Dist.1997).

■ The fraud exception is statutory. 735 ILCS 5/13–215 permits an extension of the statutory period to five years "after the person entitled to bring the same discovers that he or she has such cause of action" if "a person liable to an action fraudulently conceals the cause of action" from the plaintiff. Mr. Blaz argues that the statement in the 1976 telephone call he says he received, presumably from Ms. Arnold, amounted to fraud. Ordinarily fraudulent concealment requires a plaintiff to show "affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim."[6] *Foster v. Plaut*, 252 Ill.App.3d 692, 192 Ill.Dec. 238, 243, 625 N.E.2d 198, 203 (1st Dist.1993). The misrepresentations must have been known to be false and made with the intent to deceive the plaintiff. *Id.*

■ As Mr. Blaz argues, rarely will such evidence be direct. He points to various journal articles written during the 1975–1977 period that indicate that physicians in the field were finding more and more evidence that childhood irradiation led to various pathologies in the neck area, which were not limited to the thyroid. I agree that a question of fact exists as to the defendants' knowledge during this period. Obviously, whether Mr. Blaz was actually told by a representative of defendants in 1976 that the danger was limited to the thyroid is also a question of fact.

But tolling for fraudulent concealment will not be allowed if a plaintiff could have discovered the claim by using ordinary diligence. *Smith v. Cook County Hospital*, 164 Ill. App.3d 857, 115 Ill.Dec. 811, 815, 518 N.E.2d 336, 340 (1st Dist.1987). Mr. Blaz' medical history indicates numerous medical problems in his neck area over the years. In 1974, he was diagnosed with a benign parotid tumor (a salivary gland tumor), which was surgical-

ly removed. The tumor recurred in 1987. That year he was also diagnosed with a jugular schwannoma (benign nerve sheath tumor in his neck area). Despite surgery, both tumors recurred in 1988. Mr. Blaz again underwent surgery. In 1989, he was given a series of radiation treatments because of recurrence of the schwannoma, which at that time had attached itself to his brain stem.

Mr. Blaz says that as a result of defendants' assurance, as well as the absence of any reference to other possible ailments in the 1981 questionnaire he received from defendants, he had been concerned only about his thyroid, which, in addition to the treatments described above, he has had checked on a regular basis. (Blaz memorandum at 7.) Whether a plaintiff should have discovered his claim by the exercise of ordinary diligence is generally a fact question, but like any other factual issue, if a fact finder could not reasonably find in favor of the plaintiff, summary judgment is appropriate. *Montgomery v. University of Chicago*, 776 F.Supp. 342, 344 (N.D. Ill.1991). *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In this case it is difficult to believe that Mr. Blaz did not have sufficient facts to at least require him to inquire as to a possible relationship between his various tumors and his infant x-ray treatment, at least by 1989 or 1990.[7] As Mr. Blaz argues, by then there was widespread medical knowledge that there was a relationship between tumors in the area of the neck and past radiation treatment. Mr. Blaz was not an uneducated individual, having received a Master's degree in rehabilitation psychology.[8] His numerous tumors required repeated contact with physicians who would seem likely to have been aware of the medical literature. Nevertheless, in neither the cases cited by defendants

---

6. Mr. Blaz argues that even if a fraudulent misrepresentation was not made, the defendants' fiduciary relationship to him allows tolling on the basis of failure to inform him of their knowledge. This argument, however, was rejected by the Illinois courts in *Smith v. Cook County Hospital*, 115 Ill.Dec. at 816, 518 N.E.2d at 341.

7. The fact that his dentist in 1994 linked his tooth problems with the x-ray treatment indicates that at some point he informed treating professionals of the childhood procedure. One question would be whether he asked others, and their response if he did.

8. According to his deposition, he also has a 160 I.Q. Blaz dep. at 81.

(who devoted little attention to this issue) nor in those found by this court has summary judgment been granted on facts similar to these. In cases in which summary judgment has been granted on failure to use due diligence, there appear to have been either an admission on the part of the plaintiff that he believed his injury was caused by the defendant at a point in time when he could have filed within the limitations period or the plaintiff had essentially been told by other medical practitioners that he had an injury that must have been caused by the defendant. Accordingly, I conclude that a trial on this issue will be necessary.[9]

Mr. Blaz also argues that certain counts of his complaint relate to separate torts committed by defendants in the late 1970's caused by their failure to warn him once they acquired knowledge of the relationship between his tumors and prior treatment. Mr. Blaz relies on *Mink v. University of Chicago,* 460 F.Supp. 713 (1978) for this proposition. In *Mink,* Judge Grady held that when a hospital "became aware, or should have become aware, of facts which would induce a reasonable physician under the same circumstances to warn patients of the risks involved in treatment, a duty to notify arose." *Id.* at 720. He added that the obligation to notify was not lessened if the hospital learned of the risk after treatment. *Id.* Mr. Blaz argues that this duty was a continuing one and that the statute of limitations did not begin to run on this claim until he learned of the relationship from his dentist in 1994. Assuming that *Mink* would be followed by an Illinois court, the duty would arise, and thus the cause of action accrue, when defendant had sufficient facts to understand that its treatment had placed a plaintiff at risk. Under Mr. Blaz' theory—that the hospital had these facts in the late 1970's—the statute of limitations still would have run. Thus, to preserve his claim, plaintiff still would have to show that he had satisfied his duty of inquiry.[10]

*Conclusion*

For the reasons stated in this opinion, defendants' motion for summary judgment based on the statute of limitations is denied. At the next status hearing, the parties should be prepared to address the question of whether a separate trial on this issue would be sensible and practical.

---

**9.** Mr. Blaz also argues that principles of equitable estoppel require the tolling of the statute of limitations. Since essentially the same principles apply with respect to plaintiff's duty of inquiry as apply to the fraud claim, I need not discuss this separately.

**10.** As Judge Grady noted, a plaintiff would also have to show a separate injury attributable to the delay caused by the breach of the duty to notify.