**LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, in its own behalf and as subrogee to certain claimants, Plaintiff,**

v.

**DEARBORN TITLE CORPORATION, an Illinois corporation, Eileen Rasulis, an individual, First Midwest Bank, N.A., a National Banking Corporation, and Nancy Freeman, an individual Defendants,**

and

**United Financial Mortgage Corp., Garnishee–Defendant.**

No. 94 C 3277.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1998.

822

Steven P. Handler, William Paul Schuman, David J. Dicker, McDermott, Will & Emery, Chicago, IL, Jonathan I. Flaum, Ross & Hardies, Chicago, IL, Corey B. Rubenstein, Stetler & Duffy, Ltd., Chicago, IL, for Lawyers Title Ins. Corp.

Craig M. White, Jennifer Kathryn Walter, Erin Leigh Bishop, Wildman, Harrold, Allen & Dixon, Chicago, IL, for First Midwest Bank, NA.

Ronald P. Kane, Michael Alan Kraft, Gomberg, Kane & Fischer, Ltd., Chicago, IL, for United Financial Mortgage Corp.

Craig M. White, Wildman, Harrold, Allen & Dixon, Chicago, IL, for First Midwest Bank, NA.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

▮ On remand following the Court of Appeals decision in this case, both parties have filed motions for summary judgment. Garnishee-defendant United Financial Mortgage Corp.'s motion is considered first.

United seeks summary judgment on the ground that Lawyers Title Insurance Corporation cannot recover under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., both because it has no standing and because its claim was not tolled and is therefore barred by the one year statute of limitations. I conclude that Lawyers Title does have standing to sue. The Act allows any person "charged for the settlement service" to recover from any person accepting any kickback for business. 12 U.S.C. § 2607. At least with respect to $200 of the alleged $300 fee, the fact that the payment was exactly that has been determined as a matter of law and affirmed by the Seventh Circuit. 118 F.3d 1157, 1162 (7th Cir.1997). Lawyers Title argues and United has not refuted that Dearborn customers paid the fees in that there was a loss in their accounts due to payment of the fees and Lawyers Title stands in the shoes of Dearborn because it paid the shortfall. In response, United reargues facts that have been determined against it, saying that the payments were simply for the use of its facility under an agreement with Dearborn. Having lost that argument before, it cannot provide a defense.[1]

▮ United also seeks summary judgment on the ground that the one year statute of limitations for RESPA claims is not tolled in this case. "Where a defendant fraudulently conceals a [RESPA] cause of action, the statute is tolled until plaintiff, exercising due diligence, should have discovered the claim." Moll v. U.S. Life Title Ins. Co. of New York, 700 F.Supp. 1284, 1289 (S.D.N.Y.1988); accord Foster v. Plaut, 252 Ill.App.3d 692, 625 N.E.2d 198, 203–04, 192 Ill.Dec. 238, 243–44 (1st Dist.1993). In this case, whether or not United fraudulently concealed the kickbacks, Lawyers Title has failed to show that it used due diligence to detect the illegal kickbacks. David Fowle, an employee of Lawyers Title, investigated the $565,649.26 check beginning in May, 1994. Based on his investigation, he believed that Dearborn's escrow account was

---

1. In response to many of the arguments made by Lawyers Title on these motions, United has taken the same approach, in essence simply ignoring both this court's prior opinion and that of the court of appeals. This has necessitated more work both by Lawyers Title and this court. It is difficult to reconcile United's approach with its obligations under Rule 11, Fed.R.Civ.P. and statutory law.

short because of that check and that there were a lot of unanswered questions. He turned over his findings to Laurie Spears, in-house counsel for Lawyers Title. At that time, Lawyers Title should have asked United about the check but failed to do so until after the limitations period had run. By failing to inquire, Lawyers Title did not act with due diligence to discover its cause of action and thus, the statute of limitations was not tolled.

Although United is therefore entitled to summary judgment on Lawyers Title's RES-PA claim, Lawyers Title also seeks recovery, and summary judgment, under a theory of fraudulent conveyance.

Under Illinois law, a cause of action for fraudulent conveyance must be brought "within 4 years after the transfer was made or the obligation incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." 740 ILCS 160/10(a). United contends that Lawyers Title did not file its fraudulent conveyance claim until after the limitations period ended when it filed its present motion for summary judgment on April 10, 1998.[2] Lawyers Title, however, has consistently and explicitly raised fraudulent conveyance as a basis for recovery against United beginning with its original Motion for Turn Over Order filed on November 20, 1995. Thus, this claim is not barred by the statute of limitations.

■ United alternatively argues that Lawyers Title, as the judgment creditor of Dearborn, stands in the shoes of Dearborn and cannot recover for Dearborn's fraudulent conveyance. "The rule is that the maker of the fraudulent conveyance and all those in privity with him—which certainly includes the corporations—are bound by it." *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir.), *cert. denied*, 516 U.S. 1028, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995). The Seventh Circuit,

however, found that the purpose of the rule is to ensure that the wrongdoer did not profit from the wrong by recovering property that he or she parted with to thwart creditors. *Id.* In this case, the wrongdoer was Ms. Rasulis as president of Dearborn. The party seeking to recover the funds is Lawyers Title, a party innocent of all wrongdoing. Furthermore, Lawyers Title is not only seeking to recover funds as a judgment creditor but also as a creditor in its own right for the premiums owed it and as a subrogee to Dearborn's creditors pursuant to the closing protection letters.[3] Thus, I do not find that Lawyers Title is precluded from bringing its fraudulent conveyance claim.

■ Lawyers Title claims that the check was a fraudulent conveyance because Dearborn transferred the check with the actual intent to defraud Dearborn's creditors. *See* 740 ILCS 160/5(a)(1) ("A transfer made ... by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made ... if the debtor made the transfer ... with actual intent to hinder, delay, or defraud any creditor of the debtor...."). It argues that the court should infer intent to defraud based on the following: (1) Dearborn and Ms. Rasulis refused to respond to Lawyers Title's complaint and a default judgment was entered; (2) Ms. Rasulis refused to answer any questions about the fraud and about United's participation in it; and (3) there is voluminous evidence of Dearborn's lapping scheme. In addition, of course, the evidence is conclusive that there was no legitimate basis for the check. There can be no conclusion other than that Dearborn intended to defraud its creditors. *See Lawyers Title*, 118 F.3d at 1160.

[6] Lawyers Title also argues that the check was a fraudulent conveyance under 740 ILCS 160/6(a).[4] Before reaching the merits

---

**2.** The last check, the $565,649.26 check, was transferred on January 13, 1994, more than four years before April 10, 1998.

**3.** United argues that Lawyers Title never claimed that Dearborn owed it money for premiums. This is untrue. In Lawyers Title's complaint it sought to recover unpaid premiums.

**4.** 740 ILCS 160/6(a) provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the

of this claim, I must address whether Lawyers Title can even claim fraudulent conveyance under 740 ILCS 160/6(a) as "a creditor whose claim arose before the transfer was made." United argues that Lawyers Title was not a creditor of Dearborn on January 13, 1994 when Dearborn wrote the $565,649.26 check to United. I agree that Lawyers Title did not become a judgment creditor until December, 1994. The undisputed evidence shows, however, that on January 13, 1994, Dearborn had sold hundreds of title insurance policies and had never remitted the premiums to Lawyers Title. Dearborn's obligation to pay Lawyers Title the premiums arose at the time it sold the policies. The fact that Lawyers Title did not attempt to collect on that debt until after January 13, 1994 (because Dearborn did not inform Lawyers Title of the sales), does not change when the debt was created. Thus, Lawyers Title was a creditor of Dearborn's before the transfer was made.

■ To prove fraudulent conveyance under 740 ILCS 160/6(a), Lawyers Title must establish that the checks were not supported by commensurate consideration and that it impaired Dearborn's solvency. The Seventh Circuit has already found that Dearborn had no legally cognizable debt to United arising out of either the bounced check agreement or the kickbacks under the facility use agreement. *Lawyers Title,* 118 F.3d at 1161–62. Since Dearborn's payment of moneys for the kickbacks and for the bounced checks did not discharge any debt it owed to United, Dearborn received no consideration for this payment.[5]

■ On the other hand, as I held in my previous opinion, there is a factual dispute as to whether Dearborn owed United $100 per closing under the alleged facility use agreement and up to $140,000 as part of a tort settlement agreement. Any amounts paid to United to settle these debts would be supported by commensurate consideration and would not be part of Lawyers Title's fraudulent conveyance claim.

As for the second requirement, Lawyers Title argues that the transfer of the funds to United endangered Dearborn's solvency. It presents Dearborn's financial statement for the year ended July 31, 1993 which shows Dearborn's total assets as $171,129.32 and its total stockholder's equity as negative $540,136.53. It further provides testimony by Dearborn's accountant, Owen McCarthy, that he believed Dearborn was on the brink of financial collapse. In response, United has provided no contradictory evidence. I conclude that Dearborn was insolvent when the $565,649.26 check was transferred or that Dearborn became insolvent because of it.

### Conclusion

For the foregoing reasons, United's and Lawyers Title's motions for partial summary judgment are each granted in part and denied in part.

debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

5. Whether or not Dearborn could have recovered under RESPA does not change the fact that the kickback was not a legally cognizable debt.