LOTTIE A. ZAGAR, Plaintiff-Appellant, *v.* HEALTH AND HOSPITALS GOVERNING COMMISSION OF COOK COUNTY *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 78-1941

Opinion filed April 22, 1980.

Lottie A. Zagar, of Chicago, for appellant, *pro se.*

Winston & Strawn, of Chicago (Calvin P. Sawyer and Danae Prousis, of counsel), for appellees Health and Hospitals Governing Commission of Cook County and Dr. William Towne.

Anton J. Valukas, of Chicago (Morton A. Kier, of counsel), for appellee Dr. Ghazi Jawad-Kanber.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

A cardiac catheterization performed on Lottie A. Zagar, plaintiff *pro se*, on July 16, 1971, by defendant Doctors Ghazi Jawad-Kanber and William Towne, while resident physicians at Cook County Hospital, is the apparent genesis of a series of her complaints and lawsuits. She appeals from the dismissal of her most recent complaint for "fraud and malpractice" based upon her failure to serve notice upon defendants pursuant to the requirements of the Local Governmental and Governmental Employees Tort Indemnity Act (Ill. Rev. Stat. 1971, ch. 85, par. 1—101 *et seq.*) (hereinafter Act). We affirm for the reasons set forth below.

On July 2, 1973, plaintiff commenced a *pro se* action against only Drs. Jawad-Kanber and Towne (sometimes hereinafter doctors). An amended complaint alleged that: the doctors were engaged in medical practice at Cook County Hospital (hereinafter hospital) when they treated plaintiff; when she went to the hospital for treatment of a cough, the doctors diagnosed "a leakage of the mitral valve"; Dr. Jawad-Kanber advised her she should undergo a minor operation to determine its cause; she was probably used as a guinea pig by the doctors' experimentation; Dr. Towne performed a catheterization on plaintiff's right arm while Dr. Jawad-Kanber "inserted tubes and other things and performed certain other actions unknown to plaintiff to and into plaintiff's right upper thigh at or about the groin"; and as a direct and proximate result of the doctors' "careless, unskilled and negligent" actions, she suffered numerous injuries, among them an infection in her right arm, purple and discolored fingernails, bruises and discoloration which "continue to appear from time to time," severe dizzy spells, vision impairment, partial loss of sensation in her right arm and sleeplessness. She sought damages in the sum of $25,000. On the trial date of December 3, 1975, the trial court on its own motion appointed counsel for plaintiff and her subsequent motion for a voluntary nonsuit was allowed.

The instant successor *pro se* action was filed on July 16, 1976, adding Cook County Hospital[1] as a defendant. Arising out of the same medical procedure as did the 1973 suit, the new complaint included the following allegations: the doctors, knowing plaintiff did not complain of or suffer

---

[1] Although the complaint names the hospital as a party defendant, the Health and Hospitals Governing Commission of Cook County was the public entity which operated, maintained and managed the hospital at all relevant times. (Ill. Rev. Stat. 1971, ch. 34, par. 5020.) By Public Act 81-1197, §10, effective November 30, 1979, such control was transferred to the Board of Commissioners of Cook County.

from leakage of the mitral valve or any other heart ailment, falsely represented to her that she did, and that an operation would show its cause; she was "induced and coerced to submit to such unnecessary and experimenting surgical operations * * *," which were a "fabrication"; Dr. Jawad-Kanber knew plaintiff had an "ejection murmur" on May 24, 1971, which plaintiff found in a medical book on June 4, 1976, to be a condition which was "never serious"; Dr. Jawad-Kanber, "with the wilful intent to have plaintiff consent to surgery, * * *" informed her that her children would also be born with leakage of the mitral valve unless she consented to it; Dr. Towne also "perpetrated fraud" upon plaintiff by concealing the facts that she had an ejection murmur and that the X ray showed no evidence of heart ailment; she was fed certain specified drugs when the doctors "well knew that drugs not only destroy a person's heart, but also other organs of the body"; Dr. Towne, who hit the nerve in plaintiff's arm when performing surgery, told her the hospital was to blame for her infection; and defendants wilfully and maliciously allowed her to suffer and her heart and other organs to be destroyed "* * * because of the drugs, infection, and surgery which was not needed." The list of injuries alleged to have been caused by defendants' aforesaid actions was expanded to include forty specific ailments, for which plaintiff sought compensatory damages of $2,000,000 and punitive damages of $3,500,000.

Defendants moved to dismiss on the ground that plaintiff failed to serve them with notice pursuant to sections 8—102 and 8—103 of the Act (Ill. Rev. Stat. 1971, ch. 85, pars. 8—102, 8—103). On July 19, 1978, the trial court ordered the cause dismissed with prejudice as to all defendants. Section 8—102 of the Act then in effect[2] required that any person about to commence a civil action for damages on account of injury caused by a local public entity or its employees due to acts committed in the scope of employment, must serve written notice within six months from the date the injury was received or the cause of action accrued. (Ill. Rev. Stat. 1971, ch. 85, par. 8—102.) Section 8—103 provides for dismissal of any action for which the requisite notice has not been served. (Ill. Rev. Stat. 1971, ch. 85, par. 8—103.) Plaintiff appeals from this order and the subsequent order of August 18, 1978, denying her motion to vacate the dismissal order.

Although plaintiff presents as an issue whether her complaint states a cause of action, our disposition of this case, concordant with the trial court's dismissal, is grounded in plaintiff's disregard of the statutory notice requirements applicable to her claims. Plaintiff does not deny her

---

[2] This section was amended by Public Act 78-201, §1, effective October 1, 1973, extending the period within which one must serve notice to one year. Ill. Rev. Stat. 1975, ch. 85, par. 8—102.

failure to serve the requisite notices, but seeks refuge in the discovery rule as applied to the statute of limitations in medical malpractice cases, citing section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1); *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450; and *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934. She submits the gist of her complaint was that defendants fraudulently concealed from her the fact that they were using her as a "human guinea pig" by conducting experiments upon her person without her informed consent, thereby denying her knowledge of when her cause of action accrued and preventing her compliance with the notice requirements of the Act. She claims to have discovered the true nature of her condition by reading a medical book on June 4, 1976, as reflected in the allegations of her complaint. Nowhere in her complaint does she plead that she could not reasonably have discovered the purported negligence or fraudulent concealment within the statutory notice period or why this was so. Since the notice requirement is "a form of limitations," she argues, the discovery rule articulated in *Roper*, that the statute of limitations does not begin to run "[u]ntil such time as a plaintiff knew or should have known that a condition, seemingly innocent in causation, was perhaps the result of another's act which may have been negligent * * *" (59 Ill. App. 3d 706, 714), should be applied in the present case.

Essentially the same argument was recently considered in *Addison v. Health & Hospital Governing Com.* (1977), 56 Ill. App. 3d 533, 371 N.E.2d 1060. As in the case at bar, the plaintiff there gave no explanation for the delay in her discovery of the facts underlying the complaint; nevertheless, she maintained that she had met the notice requirement by filing her complaint within one year of the date of discovery of the alleged malpractice (56 Ill. App. 3d 533, 536). Under these facts the court affirmed dismissal of the action, finding insufficient the mere assertion she could not have discovered the cause of action until after the applicable notice period had expired (56 Ill. App. 3d 533, 537). In the present case, plaintiff's invocation of the discovery rule similarly is not supported by allegations factually explaining the delay. Assuming, *arguendo*, the discovery rule as currently developed were to be applied to the facts before us, plaintiff's action would still be untimely, as revealed by her prior pleadings. She acknowledges that her 1973 lawsuit was based upon the same medical procedure as the 1976 action. Plaintiff's responsibility to specifically plead facts in the complaint showing that the action was brought either during the applicable limitations period or within two years after the date she could reasonably have learned of her injury has not been satisfied. *Kielminski v. St. Anthony's Hospital* (1979), 68 Ill. App. 3d 407, 408, 386 N.E.2d 326; *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 888, 374 N.E.2d 670.

■■ Plaintiff asserts that the doctors' fraudulent concealment prevented her from discovering her cause of action earlier than she did, thereby bringing her within the Act's notice requirements. The only factual allegations of fraudulent concealment, however, relate the doctors' diagnosis of the nature and gravity of her illness. Under the discovery rule, it is the plaintiff's awareness of injury and a possibly negligent cause that triggers the relevant limitations period. (*O'Bryant v. Starkman* (1977), 53 Ill. App. 3d 991, 993, 369 N.E.2d 215.) In the absence of any explanation why knowledge of her injuries or of their allegedly negligent cause was unavailable to plaintiff in the intervening five year period (*Roper*, 59 Ill. App. 3d 706, 714) and notice as required by the Act thereby pretermitted, the discovery rule cannot be extended to preserve her claim. As we held in *Kielminski*, a *pro se* plaintiff seeking to pursue a medical negligence claim is not relieved of the difficult task of properly pleading and prosecuting the complaint and action. 68 Ill. App. 3d 407, 408.

■ Plaintiff also relies upon section 22 of the Limitations Act, which provides that if a party liable to an action fraudulently conceals the cause from the knowledge of the person entitled to it, such action may be commenced within five years after the person learns of the cause of action (Ill. Rev. Stat. 1971, ch. 83, par. 23). The concealment contemplated by this section must consist of affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action; mere silence of the defendant and failure by the plaintiff to learn of the cause are not sufficient. (*Jackson v. Anderson* (1934), 355 Ill. 550, 557, 189 N.E. 924; *Chicago Park District v. Kenroy, Inc.*, 58 Ill. App. 3d 879, 886-87.) Even where this standard is met, section 22 does not apply if the party affected by the fraud might, with ordinary diligence, have discovered it. (*Greenock v. Rush Presbyterian St. Luke's Medical Center* (1978), 65 Ill. App. 3d 266, 271, 382 N.E.2d 321; *Solt v. McDowell* (1971), 132 Ill. App. 2d 864, 272 N.E.2d 53.) Nothing in plaintiff's complaint or argument before us indicates how defendants' alleged fraudulent concealment prevented her from discovering the purported injuries within the time allowed for notice; as noted above, those injuries were only incidentally related to the facts claimed to have been fraudulently concealed. Nor is plaintiff's insistence that section 22 is applicable because the alleged fraud is part of the cause of action persuasive, since fraudulent misrepresentations which form the basis of a cause of action do not constitute fraudulent concealment under that section in the absence of a showing that they tended to conceal the cause of action. *Skrodzki v. Sherman State Bank* (1932), 348 Ill. 403, 181 N.E. 325; *Keithley v. Mutual Life Insurance Co.* (1916), 271 Ill. 584, 111 N.E. 503; *Bush v. Continental Casualty Co.* (1969), 116 Ill. App. 2d 94, 100, 253 N.E.2d 619.

■ Plaintiff urges that the doctors were not entitled to any notice under the Act because they were acting outside the scope of their employment. Acknowledging that for some purposes they may have been hospital employees, she maintains that in exercising medical judgment they performed as "independent contractors" responsible for their own acts and not entitled to presuit notice under section 8—102. No facts have been alleged that could establish a basis for this position. Notice is required under the Act for any civil action commenced against a local public entity or any of its employees, whether involving negligence or wilful and wanton conduct. (*Johnson v. King* (1977), 55 Ill. App. 3d 336, 341, 371 N.E.2d 18; *Panko v. County of Cook* (1976), 42 Ill. App. 3d 912, 356 N.E.2d 859; see also *Ramos v. Armstrong* (1972), 8 Ill. App. 3d 503, 289 N.E.2d 709; *Dear v. Locke* (1970), 128 Ill. App. 2d 356, 262 N.E.2d 27.) The record before us impels a contrary conclusion, that the acts of the doctors of which plaintiff complains were "* * * the essence of their employment * * *" (*Dear*, 128 Ill. App. 2d 356, 368), and therefore within the Act's notice requirement.

Plaintiff's reliance upon *Watson v. St. Annes Hospital* (1979), 68 Ill. App. 3d 1048, 386 N.E.2d 885, and *Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131, in this context is misplaced. Those decisions were not concerned with nor even referred to the Act, but rather involved public officials' immunity doctrine, and, as to the scope of employment issue, turned upon whether or not the liability or other civil control by the state was more than colorably at issue. (*Watson*, 68 Ill. App. 3d 1048, 1052; *Madden*, 56 Ill. App. 3d 997, 1000-01.) No local governmental body was involved in either case, and the court's negative answer was in each case grounded in the fact that the plaintiff was totally foreclosed from proceeding further against the State. (*Watson*, 68 Ill. App. 3d 1048, 1052-53; *Madden*, 56 Ill. App. 3d 997, 1001.) By contrast, the provisions of the Act at issue here neither preclude nor restrict the potential liability of the local governmental entity and its employees, but rather provide for timely notice of injury so as to facilitate prompt investigation and disposition of meritorious claims. *King v. Johnson* (1970), 47 Ill. 2d 247, 250-51, 265 N.E.2d 874.

For the foregoing reasons the judgment of the trial court must be affirmed.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.