SCOTT RYDIN FOSTER, Plaintiff-Appellant, v. HANNAH MARIE PLAUT *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—91—1974

Opinion filed August 27, 1993.—Rehearing denied October 5, 1993.

Scott Rydin Foster, of Chicago, appellant *pro se*.

Sidley & Austin, of Chicago (Frederic J. Artwick, Amy D. Mayber, and Andrew R. Klein, of counsel), for appellees Northwestern University Student Health Service, Peter Barglow, Harold Visotsky, and Rex Hammond.

Bollinger, Ruberry & Garvey, of Chicago (Barry G. Bollinger, Stuart A. Ringel, and William M. Gantz, of counsel), for appellees Hannah Marie

Plaut, Truman Gerald Esau, North Park Clinic, P.C., and Robert W. Boxer, M.D., P.C.

JUSTICE GIANNIS delivered the opinion of the court:

Plaintiff instituted this action asserting personal injuries allegedly sustained as a result of negligent psychiatric and medical treatment rendered by defendants from December 1973 through June 1977. Plaintiff also sought recovery under section 1983 of the United States Code (42 U.S.C. §1983 (Supp. V 1981)), alleging violations of his civil rights. In addition, plaintiff sought damages for the improper release of his psychiatric records and for the failure to correct those records. The trial court dismissed all but one of plaintiff's claims, finding that they had not been brought within the applicable limitations periods. Pursuant to Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), the trial court's order provided that there was no just reason for delay in enforcement or appeal of the dismissal of plaintiff's claims. On appeal, plaintiff raises 16 issues which assert, in substance, that his actions were timely filed and that the trial court erred in dismissing all but one of the claims raised in his amended complaint.

The record reflects that plaintiff's initial complaint was filed on April 24, 1989, and alleged medical malpractice claims against defendants Plaut, Esau, North Park Clinic (hereinafter North Park), Boxer, Barglow, Visotsky, Hammond, and Northwestern University Student Health Service (hereinafter the University Health Service). Plaintiff alleged that the defendants' acts of negligence occurred during the course of psychiatric and medical treatment rendered to him from 1973 to 1977. Plaintiff alleged further that each defendant had fraudulently concealed these causes of action and that he did not discover his claims until April 24, 1984.

Defendants moved to dismiss this complaint, asserting that plaintiff's claims were barred because they were not brought within the four-year limitations period for medical malpractice actions set forth in section 13—212 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—212). On August 21, 1989, the trial court dismissed the complaint, without prejudice, and allowed plaintiff leave to file an amended complaint.

On January 23, 1990, plaintiff filed an amended complaint which asserted 11 counts in 4,463 paragraphs and consisted of 168 pages. In counts I through V of his amended complaint, plaintiff alleged medical malpractice claims against each of the eight defendants. Specifically, plaintiff asserted that he first sought and received psychiatric care at North Park for depression on February 22, 1973, and he was treated

at North Park by Plaut, a registered nurse, and by Esau, a psychiatrist, from February 22, 1973, to May 1974. Plaintiff alleged that Plaut, Esau, and North Park negligently misdiagnosed his physical condition (the healing of a compression fracture of the T-7 and T-8 vertebrae) as schizophrenia and rendered improper psychiatric treatment.

The amended complaint asserted further that, at the recommendation of Plaut, he sought treatment from defendant Boxer, an allergist, and he was treated for food allergies by Boxer from August 3, 1973, to May 16, 1975. Plaintiff alleged that Boxer negligently misdiagnosed his physical symptoms and improperly treated those symptoms as an allergy.

Plaintiff also asserted that during a telephone conversation on November 1, 1976, defendant Barglow told him that a warrant had been issued for his arrest, and Barglow suggested that he seek voluntary hospitalization. Plaintiff alleged that Barglow negligently failed to diagnose or treat plaintiff's condition "which included both physical and psychiatric illnesses."

The amended complaint asserted further that defendant Visotsky, who was Barglow's immediate supervisor, failed to return two telephone calls from plaintiff on December 28, 1976, and in January 1977. Plaintiff alleged that by not returning plaintiff's telephone calls, Visotsky negligently failed to take proper supervisory action after receiving plaintiff's calls and failed to properly discipline Barglow for his conduct.

Plaintiff also asserted that he sought treatment from the University Health Service and was treated there by defendant Hammond between 1974 and 1977. Plaintiff alleged that Hammond characterized plaintiff's condition as "delusional" in June 1977 and negligently failed to diagnose or treat plaintiff's condition, "which included both physical and psychiatric illnesses."

In counts VI and VII plaintiff claimed that defendants Esau and North Park had improperly released his psychiatric records and failed to modify those records in accordance with a written statement submitted by him.

In counts VIII through XI, plaintiff asserted violations of his civil rights by all of the defendants except the University Health Service and alleged that the defendants had conspired to and threatened to have plaintiff involuntarily hospitalized in a psychiatric treatment center in violation of his fourteenth amendment right to due process.

According to the amended complaint, plaintiff was involved in an automobile accident on March 15, 1984. Plaintiff asserted that during

the course of treatment for injuries sustained in this accident, he was diagnosed as having suffered a compression fracture of the T-7 and T-8 vertebrae of the spine. The amended complaint alleged that during an office visit with a doctor on April 25, 1984, plaintiff began to realize that he had suffered a compression fracture long before this accident. Plaintiff asserted that he had suffered a compression fracture as a result of his avoidance of a head-on collision on January 7, 1973, and that the healing of this compression fracture caused physical symptoms which were diagnosed as schizophrenia in February 1973. Plaintiff claimed that the defendants had negligently failed to diagnose his physical symptoms as the healing of a compression fracture.

Plaintiff's amended complaint also alleged that each of the defendants had fraudulently concealed his claims and that he did not discover these causes of action until April 25, 1984, when his compression fracture of the spine was diagnosed. Plaintiff asserted that although he knew in April 1984 of the numerous causes of action he had against the defendants, he did not file suit at that time because he felt that the limitations period had expired. Plaintiff claimed that he learned of his causes of action while doing legal research in December 1988 when he read section 13—215 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—215), which states that the limitations period is tolled where the cause of action has been fraudulently concealed. Plaintiff contended that his claims were timely brought within the five-year limitations period set forth in section 13—215.

Defendants moved to dismiss the amended complaint, asserting that plaintiff's claims were barred by the applicable statutes of limitations and that he had failed to plead sufficient facts to support his claim of fraudulent concealment.

On November 19, 1990, the trial court dismissed with prejudice all of plaintiff's claims except the medical malpractice claim directed against defendant Esau. The trial judge's dismissal order was premised upon his finding that plaintiff had failed to set forth any well-pleaded facts establishing that the defendants intentionally deceived plaintiff or that plaintiff had relied upon the acts of the defendants in failing to discover his causes of action. The order of dismissal provided that it was final and that there was no just cause for delay in enforcement or appeal.

On December 19, 1990, plaintiff filed a motion which requested that the trial court reconsider certain portions of the dismissal order. In this motion, plaintiff sought reinstatement of his medical malpractice claims against Plaut and North Park. Plaintiff also sought rein-

statement of his Federal claims against all defendants for violations of his civil rights. Plaintiff further requested reinstatement of his claims against Esau and North Park based upon the improper release of his medical records and the failure to correct those records. The motion for reconsideration did not seek reversal of the dismissal of plaintiff's medical malpractice claims against Boxer, Barglow, Visotsky, Hammond, or the University Health Service.

On May 13, 1991, the trial court denied plaintiff's motion for reconsideration, and plaintiff filed the instant appeal on June 11, 1991.

On appeal, plaintiff initially contends that the trial court erred in dismissing all of his medical malpractice claims except that directed against defendant Esau.

Defendants Boxer, Barglow, Visotsky, Hammond, and the University Health Service challenge this court's jurisdiction to address plaintiff's appeal of the dismissal of these claims.

Jurisdiction is conferred upon this court only through the timely filing of a notice of appeal. (134 Ill. 2d R. 301; *Hassan v. Wakefield* (1990), 204 Ill. App. 3d 155, 157, 561 N.E.2d 1160; *Kotalik v. Jensen* (1990), 201 Ill. App. 3d 838, 842, 559 N.E.2d 251.) Thus, the requirement that the appellant file a notice of appeal within the prescribed time period is both jurisdictional and mandatory. *In re Estate of Goodlett* (1992), 225 Ill. App. 3d 581, 587, 588 N.E.2d 367; *Hassan*, 204 Ill. App. 3d at 157; *Kotalik*, 201 Ill. App. 3d at 842.

Where an appeal is taken from a final judgment disposing of fewer than all of the parties or claims (134 Ill. 2d R. 304(a)), the time for filing the notice of appeal is governed by the provisions of Supreme Court Rule 303 (134 Ill. 2d R. 303). (See *Kotalik*, 201 Ill. App. 3d at 841.) Rule 303(a)(1) provides that a timely post-trial motion, attacking a final judgment, tolls the time for filing a notice of appeal, and the notice of appeal must be filed within 30 days after the entry of the order disposing of the last pending post-trial motion. 134 Ill. 2d R. 303(a)(1).

■ In the instant case, plaintiff's motion for reconsideration did not seek relief from the dismissal of plaintiff's medical malpractice claims against defendants Boxer, Barglow, Visotsky, Hammond, or the University Health Service. This motion was not directed against the final judgments entered in favor of these defendants and did not affect the court's finding that there was no just reason to delay enforcement or appeal. (See *Marsh v. Evangelical Covenant Church* (1990), 138 Ill. 2d 458, 462, 563 N.E.2d 459; *S J S Investments, Ltd. v. La Salle National Bank* (1991), 210 Ill. App. 3d 228, 230, 569 N.E.2d 49.) Thus, the filing of the motion for reconsideration did not

extend the time for appeal of the trial court's final order as to these claims. In order to challenge the dismissal of these claims, plaintiff was required to file a notice of appeal or a motion seeking reconsideration of these dismissals within 30 days of the entry of the final order on November 19, 1990. Plaintiff's notice of appeal was not filed until June 11, 1991, well beyond 30 days after the entry of the final dismissal order. Accordingly, plaintiff's appeal of the dismissal of his medical malpractice claims against defendants Boxer, Barglow, Visotsky, Hammond, and the University Health Service must be dismissed for lack of jurisdiction. See *In re Estate of Goodlett*, 225 Ill. App. 3d at 587; *Kotalik*, 201 Ill. App. 3d at 842.

We next consider whether the trial court erred in dismissing plaintiff's medical malpractice claims against defendants Plaut and North Park.

Plaintiff's medical malpractice claims against defendants Plaut and North Park were predicated upon treatment or conduct which occurred between 1973 and 1977 and were first asserted in the initial complaint, which was filed on April 24, 1989. The trial court dismissed these medical malpractice claims as untimely. Plaintiff contends his claims were timely filed where they had been fraudulently concealed from him and were asserted within five years of the date he discovered them.

The statute of limitations which governs medical malpractice actions is set forth in section 13—212 of the Code of Civil Procedure and provides that such claims must be brought within two years of the date on which the plaintiff discovered the existence of the injury and within four years after the treatment or conduct which forms the basis of the claim, regardless of when the cause of action was discovered. Ill. Rev. Stat. 1989, ch. 110, par. 13—212.

In the instant case, the plaintiff did not assert his medical malpractice claims until April 24, 1989, at least 12 years after the treatment or conduct of the defendants occurred. Thus, these causes of action were not filed within four years of the occurrence of the defendants' conduct and were not timely under section 13—212. Ill. Rev. Stat. 1989, ch. 110, par. 13—212; *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 422, 490 N.E.2d 665.

Plaintiff contends, however, that the statute of limitations governing his medical malpractice claims against defendants Plaut and North Park is section 13—215, which provides that a cause of action may be brought within five years of the date the claim is discovered if the person liable for the claim fraudulently concealed the existence of the cause of such action from the plaintiff. (Ill. Rev. Stat. 1989, ch. 110,

par. 13—215.) Plaintiff asserts that his medical malpractice claims against Plaut and North Park were timely where the defendants fraudulently concealed the existence of those claims and where the claims were asserted on April 24, 1989, within five years of April 25, 1984, which was the date plaintiff discovered them.

In general, where a plaintiff alleges that the fraudulent concealment of a cause of action has tolled the statute of limitations, it is necessary to show affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim. (*Hagney v. Lopeman* (1992), 147 Ill. 2d 458, 463, 590 N.E.2d 466; *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 561, 402 N.E.2d 181; *Skrodzki v. Sherman State Bank* (1932), 348 Ill. 403, 407, 181 N.E. 325; *Zagar v. Health & Hospitals Governing Comm'n* (1980), 83 Ill. App. 3d 894, 898, 404 N.E.2d 496.) Mere silence of the defendant and the mere failure on the part of the plaintiff to learn of a cause of action do not amount to fraudulent concealment. *Kenroy, Inc.*, 78 Ill. 2d at 561; *Jackson v. Anderson* (1934), 355 Ill. 550, 557, 189 N.E. 924.

It has been held that a plaintiff must plead and demonstrate that the defendant made misrepresentations or performed acts which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied. (*Harvey v. Harris Trust & Savings Bank* (1979), 73 Ill. App. 3d 280, 287, 391 N.E.2d 461; *Wilson v. Lefevour* (1974), 22 Ill. App. 3d 608, 609-10, 317 N.E.2d 772.) It is not sufficient to show mere misconduct, but the plaintiff must be able to show that the defendant said or did something to lull or induce the plaintiff to delay the filing of his claim after the limitations period had run. (*Smith v. Cook County Hospital* (1987), 164 Ill. App. 3d 857, 862, 518 N.E.2d 336.) In addition, fraudulent misrepresentations which form the basis of the cause of action do not constitute fraudulent concealment under section 13—215 in the absence of a showing that the misrepresentations tended to conceal the cause of action. *Skrodzki*, 348 Ill. at 407; *Smith*, 164 Ill. App. 3d at 862; *Zagar*, 83 Ill. App. 3d at 898.

Yet, even if the plaintiff can show that the defendant made fraudulent misrepresentations, the statute of limitations will not be tolled where the plaintiff could have discovered the cause of action with the exercise of ordinary diligence. (*Smith*, 164 Ill. App. 3d at 862.) Thus, if the plaintiff discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within which the plaintiff could file suit, section 13—215 will not be applied to toll the running of the limitations period. *Anderson*

*v. Wagner* (1979), 79 Ill. 2d 295, 322, 402 N.E.2d 560; *Smith,* 164 Ill. App. 3d at 862.

■ Initially, we note that the amended complaint does not contain any allegations of fraudulent concealment directed against defendant North Park or against its officers or directors. In addition, our review of the 29 allegations of fraudulent concealment asserted against defendant Plaut amounts to mere reiterations of the assertions which form the basis of plaintiff's substantive medical negligence claims. These allegations do not establish that defendants Plaut and North Park made any misrepresentations which they knew to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied. In addition, these assertions do not establish that defendants Plaut and North Park engaged in any conduct which lulled or induced the plaintiff to delay the filing of his claims until after the limitations period had run. Thus, plaintiff failed to allege sufficient facts to support his assertion that his medical negligence claims against Plaut and North Park had been fraudulently concealed from him. Accordingly, we hold that the trial court acted properly in dismissing these claims because they were not timely filed under section 13—212.

We next address plaintiff's contention that his claims of civil rights violations were timely filed.

In his amended complaint, plaintiff sought recovery under section 1983 of the Federal Civil Rights Act (42 U.S.C. §1983 (Supp. V 1981)), asserting that the defendants had violated his civil rights by allegedly attempting or threatening to have plaintiff involuntarily hospitalized for psychiatric treatment without due process of law. These claims were raised by the plaintiff for the first time in his amended complaint which was filed on January 23, 1990. The trial court dismissed plaintiff's civil rights claims, finding that they had not been timely filed. On appeal, plaintiff contends that these claims were timely filed.

Prior to the April 17, 1985, decision in *Wilson v. Garcia* (1985), 471 U.S. 261, 85 L. Ed. 2d 254, 105 S. Ct. 1938, all section 1983 claims had been governed by the five-year limitations period provided in section 13—205, a residual statute of limitations that applies to all civil action not otherwise provided for (Ill. Rev. Stat. 1985, ch. 110, par. 13—205). See *Beard v. Robinson* (7th Cir. 1977), 563 F.2d 331, *cert. denied sub nom. Mitchell v. Beard* (1978), 438 U.S. 907, 57 L. Ed. 2d 1149, 98 S. Ct. 3125; *Rovenhagen v. Webber* (1986), 143 Ill. App. 3d 954, 956, 493 N.E.2d 734.

However, in *Wilson*, the United States Supreme Court held that because the Civil Rights Act contained no statute of limitations, courts were to apply the State statute of limitations for personal injuries which was most appropriate or analogous to a claim brought under section 1983. In Illinois, the personal injury statute of limitations is set forth in section 13—202 and provides a two-year limitations period. Ill. Rev. Stat. 1989, ch. 110, par. 13—202.

In *Anton v. Lehpamer* (7th Cir. 1986), 787 F.2d 1141, the United States Court of Appeals for the Seventh Circuit instituted a "transitional" period of limitations for claims brought under section 1983 of the Civil Rights Act. In *Anton*, the court held that a plaintiff whose section 1983 cause of action accrued before the *Wilson* decision on April 17, 1985, must file suit within the *shorter period* of either five years from the date his action accrued or two years after the date of the decision in *Wilson*. *Anton*, 787 F.2d at 1146.

Plaintiff's amended complaint asserted that his civil rights claims were discovered, and therefore accrued, on April 25, 1984. This accrual date predates the decision in *Wilson*. Thus, under the statute of limitations set forth in *Anton*, plaintiff was required to file his civil rights claims by April 17, 1987, two years after the decision in *Wilson*.

Plaintiff relies upon *Doe v. Calumet City* (N.D. Ill. 1989), 707 F. Supp. 343, to support the contention that his civil rights claims were timely filed where they were asserted within the five-year limitations period provided in section 13—205. Yet, this reliance upon the opinion in *Doe* is misplaced because the ruling in that case has subsequently been disapproved and retracted. See *Kalimara v. Illinois Department of Corrections* (7th Cir. 1989), 879 F.2d 276, 277; *Kness v. Grimm* (N.D. Ill. 1990), 761 F. Supp. 513, 518.

■ Based upon the plaintiff's assertion that his civil rights claims accrued on April 25, 1984, we hold that the trial court properly dismissed those claims as untimely where they were not filed until January 23, 1990, well beyond the two-year anniversary of the decision in *Wilson*.

■ Plaintiff argues for the first time on appeal that the production of his medical records on July 19, 1989, constituted a "distinct second date of discovery" of his section 1983 claims against Plaut, Esau, and North Park, and that the release of his records on July 19, 1989, constituted a "continuous wrong" which formed the basis of a new section 1983 claim predicated upon the possibility of "future interaction with the legal system, in general." These arguments were not presented to the trial court and have been waived on appeal.

*Brown v. Kidd* (1991), 217 Ill. App. 3d 860, 869, 578 N.E.2d 224; *Cuerton v. American Hospital Supply Corp.* (1985), 136 Ill. App. 3d 231, 238, 482 N.E.2d 992.

We next consider the dismissal of plaintiff's claim based upon the improper release of his medical records.

In count VI of his amended complaint, plaintiff requested damages in excess of $15,000 for the improper release of his psychiatric records. This claim was predicated upon an abstract or treatment summary letter composed by Esau on December 26, 1974, and transmitted to Dr. Philip Gradolph, a subsequent treating psychiatrist. Plaintiff asserted that the transmission of the abstract, which he alleged contained incomplete and false information, constituted an improper release of his records in violation of sections 9 and 15 of the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1989, ch. 91½, pars. 809, 815).

■ Plaintiff contends that he did not discover his claim for the improper release of his records until July 19, 1989. The amended complaint asserts, however, that plaintiff had received a copy of the abstract 15 years before this claim was asserted. Consequently, plaintiff was aware in 1975 that Esau had composed the abstract, that it contained information which plaintiff considered to be incomplete or false, and that a release of plaintiff's complete evaluation records, including Esau's handwritten notes, was necessary to cure any omissions from the abstract and to refute any errors or misstatements contained therein. Thus, the period of limitations for this claim commenced in 1975 when plaintiff knew or should have known of his right to recover for any improper release of his psychiatric records. Plaintiff was obligated to assert this claim within two years of the date of discovery as provided in section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—212). (See *Miller v. Tobin* (1989), 186 Ill. App. 3d 175, 177-78, 542 N.E.2d 173.) This claim was first raised by plaintiff in April 1990, when he filed his amended complaint. We hold that because the assertion of this claim was not timely, the trial court acted properly in dismissing plaintiff's claim for damages for the improper release of his psychiatric records.

Finally, we address plaintiff's contention that the trial court erred in dismissing his claims against Esau and North Park for correction of his psychiatric records. In considering this argument, we note that plaintiff's brief on appeal does not contain any argument or citation to authority which indicates that the trial court erred in dismissing this count of the amended complaint. Consequently, plaintiff has

waived his right to challenge the trial court's ruling on appeal. 134 Ill. 2d R. 341(e)(7).

Moreover, section 4(c) of the Mental Health and Developmental Disabilities Confidentiality Act provides that "[a]ny person entitled to access to a record under this [s]ection may submit a written statement concerning any disputed or new information, which statement shall be entered into the record. Whenever any disputed part of a record is disclosed, any submitted statement relating thereto shall accompany the disclosed part. Additionally, any person entitled to access may request modification of any part of the record which he believes is incorrect or misleading. If such request is refused, the person may seek a court order to compel modification." Ill. Rev. Stat. 1989, ch. 91½, par. 804(c).

■ It is undisputed that the plaintiff was entitled to access to his psychiatric records (Ill. Rev. Stat. 1989, ch. 91½, par. 804(a)(2)) and had the right to submit a written statement correcting any incorrect or misleading information contained within his record. In count VII of his amended complaint, plaintiff sought damages in excess of $15,000 from defendants Esau and North Park for their failure to correct his psychiatric records. In their motion to dismiss, Esau and North Park acknowledged the plaintiff's right to correct his records and agreed to allow him to add any information he felt was necessary to correct or to complete his psychiatric records. The inclusion of such a written statement by plaintiff would have corrected any errors, omissions, or discrepancies in his psychiatric records and was the only remedy provided in section 4(c). Thus, the agreement by Esau and North Park to include this statement in plaintiff's records rendered his claim under count VII moot, and the trial court acted properly in dismissing this claim.

For the foregoing reasons, the orders of the circuit court of Cook County are affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.