RHONDA BLOOM, Plaintiff-Appellant, v. BENNETT BRAUN *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—99—3992

Opinion filed November 1, 2000, *nunc pro tunc* September 20, 2000.—Rehearing denied November 27, 2000.

Schneider & Schneider, P.C., of Chicago (Keith J. Schneider, of counsel), for appellant.

Miner, Barnhill & Galland, P.C. (George F. Galland, Jr., of counsel), and Merlo, Kanofsky & Brinkmeier, Ltd. (John D. Dalton, of counsel), both of Chicago, for appellees Bennett Braun, Rush North Shore Hospital and Associated Mental Health Services.

Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers, Mark P. Standa, and Scott L. Howie, of counsel), for appellee Thomas Schevers.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Rhonda Bloom appeals from an order of the circuit court dismissing her second amended complaint, alleging medical malpractice in administering psychiatric treatment she received in 1991 by defendants Dr. Bennett Braun, Dr. Thomas Schevers, and Dr. Raymond Koziol[1] at defendants Rush North Shore Hospital (Rush) and Associated Mental Health Services. On appeal, Bloom contends that the trial court erred in dismissing her second amended complaint because she satisfied the requirements for alleging claims of fraudulent concealment and legal disability, both exceptions to the statute of limitations, which tolled the limitations period and, thus, she timely filed her complaint.[2] For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

Bloom filed her original complaint on August 25, 1998, seeking damages for psychiatric malpractice that occurred between April and August 1991. The trial court dismissed the complaint, finding that Bloom failed to allege sufficient allegations to support the fraudulent concealment exception to the statute of limitations and statute of repose. Bloom filed an amended complaint, alleging fraudulent concealment again for purposes of preserving the issue for review, and adding allegations that she was legally disabled and, therefore, the statute of limitations was tolled. The amended complaint also was dismissed as insufficient. Bloom then filed her second amended complaint (complaint).

In her complaint, Bloom alleged that Dr. Braun was involved with a unique psychotherapy program specializing in diagnosing a multiple personality disorder. She also alleged that Dr. Braun was an expert in uncovering repressed memories of satanic ritual abuse. Drs. Schevers and Koziol were fellows in Dr. Braun's program.

Bloom further alleged that in April 1991 she began treatment with defendants on the recommendation of her mother, who was also receiving treatment from defendants. As part of the treatment process, Bloom came to believe she was involved in horrendous satanic cult ritual abuse, of which she had no recollection before treatment. Bloom alleged that defendants misrepresented as fact that satanic rit-

---

[1]Dr. Koziol was never served with summons and Rush Presbyterian-St. Luke's School of Psychiatry is nonexistent. Thus, neither is a party to this appeal.

[2]In her notice of appeal, Bloom states that she is seeking relief from the trial court's order "entering summary judgment in favor of defendant." However, a motion for summary judgment was never filed by defendants; rather, defendants filed a motion to dismiss.

ual abuse was proven to exist and that since her mother had recovered memories of participating in such rituals, she was also a victim/participant in the activity. She further alleged that defendants created and enforced the belief that these memories were historically correct when they knew they were "outlandish," the product of "confabulation and fantasy," and there was no objective evidence of such cults. She also alleged that defendants were aware that the imagery she experienced was confabulated and a product of their therapy, yet they did not inform her that the memories and the resultant multiple personality disorder were actually caused by their therapy.

Bloom further alleged that defendants misrepresented to her that her underlying psychiatric condition was a multiple personality disorder based on her history of satanic ritual abuse and they continuously misrepresented to her that she was a victim of satanic ritual abuse from which she developed a multiple personality disorder. She further alleged that defendants misrepresented to her that she must uncover all of her memories of satanic ritual abuse to obtain mental health because each memory could house a separate personality; defendants misrepresented to her that they could diagnose her based on satanic ritual abuse without any standardized psychological surveys or objective tests; and defendants misrepresented that their multiple personality disorder treatment was safe and effective when they knew there was no support for it by recognized scientific foundations and, in fact, it was experimental. She specifically alleged:

"Thus, the defendants [*sic*] concerted misrepresentation regarding the asserted validity of therapeutically recovered memories as historical fact, and their diagnosis of multiple personality disorder as a result of the satanic ritual abuse, concealed from the plaintiff that she was injured as a result of defendants' psychotherapy which induced the confabulated satanic ritual abuse imagery, and induced the multiple personality disorder diagnosis, but at all times asserted by defendants as preexisting maladies, independent of their therapy."

She also alleged that she was lulled into not discovering her psychiatric injuries inflicted upon her by defendants' misrepresentations. With respect to the tolling of the statute of limitations, she alleged:

"That the defendants' affirmative misrepresentations regarding the SRA [satanic ritual abuse] history and MPD [multiple personality disorder] condition concealed the iatrogenic injuries of SRA and MPD as underlying conditions and deprived the plaintiff of knowledge of the iatrogenic, therapeutically inflicted injuries that she sustained under the care of the defendants and are sufficient to toll the statute of limitations as delineated under Illinois Statute 5/13—215."

Bloom's complaint identified her injuries as: aggravation of preexisting depression; great humiliation and embarrassment; a belief she was a product of incest between her mother and grandfather; self-hatred and a pattern of self-mutilation and cutting; abortion of a fetus because she believed it would be promised to the cult; irrational paranoid fear for her safety; sleep dysfunction, including sleeping with weapons under her pillow; severance of her relationship with her mother; and living in emotionally abusive and violent relationships. She also alleged that, as a result, she suffered from amnesia, lost time, delusions, and a mentally confused state. She further alleged that because of this diminished capacity, she was not able to function in her own best interests or manage her person or estate and, therefore, was legally incompetent.

Attached to the complaint were various letters from doctors who treated Bloom subsequent to her treatment by defendants. The doctors stated they believed Bloom was suffering from psychiatric disabilities. Also attached to the complaint was the report of Dr. Edward Frischholz, a clinical psychologist, whom Bloom began treatment with in 1997. Dr. Frischholz noted that Bloom had been treated by three different doctors since her treatment by defendants. In 1992 to 1993, Bloom was treated by Dr. Joseph Ziccarelli, in 1996 to 1997, she was treated by Dr. Laura Sunn, and in August 1997, she began receiving treatment from Dr. Frischholz and Drs. Robert and Bernard Shulman. The report indicated that Bloom reinstated her relationship with her mother in August 1997. At that time, Bloom's mother told her that defendants' treatment was injurious, Bloom's memories were misrepresentations, Bloom was not the product of incest, and Bloom did not suffer from a multiple personality disorder.

Dr. Frischholz's testing of Bloom indicated that she had a high average to superior range of intelligence but suffered from severe depression of a long duration. The report also indicated that Bloom held various jobs from 1985 until 1997, including one with complex and extensive responsibilities. During this time, her income steadily increased until 1996. The report also reflected that, from 1991 until 1997, Bloom lived with various individuals, including different boyfriends, and helped with rent, utilities, and other expenses. In 1998, she moved into her own apartment.

Defendants moved to dismiss Bloom's complaint pursuant to section 2—619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—619 (West 1998). The trial court granted the motion, finding that Bloom failed to satisfy the requirements to establish fraudulent concealment and that she was legally disabled. Bloom appeals from the dismissal of her complaint relative to both of her claims for fraudulent concealment and legal disability.

## ANALYSIS

■ Section 2—619(a)(5) provides for the granting of a motion to dismiss on the basis that the action was not commenced within a statute of limitations period. 735 ILCS 5/2—619(a)(5) (West 1998). The standard of review of a trial court's dismissal of a complaint pursuant to section 2—619 is *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge,* 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993). A reviewing court must ascertain whether a genuine issue of material fact existed precluding dismissal or, absent an issue of fact, whether the dismissal was proper as a matter of law. *Zedella v. Gibson,* 165 Ill. 2d 181, 185-86, 650 N.E.2d 1000 (1995).

■ Bloom's last treatment by defendants was in August 1991. The statute of limitations relevant to a medical malpractice action, pursuant to section 13—212, is two years from the time a plaintiff knew of an injury or should reasonably have known, but in no event may the action be filed later than four years after the incident giving rise to an action. 735 ILCS 5/13—212(a) (West 1998). Section 13—215 provides an exception to the statute of limitations for medical malpractice actions based upon fraudulent concealment and allows for the filing of an action within five years after the plaintiff discovers the cause of action or injury. 735 ILCS 5/13—215 (West 1998). Section 13—212(c) also provides an exception to the limitations period for a medical malpractice action where the plaintiff is legally disabled, in which case the limitations period begins to run once the disability is removed. 735 ILCS 5/13—212(c) (West 1998).

## I. Fraudulent Concealment

Bloom contends that the statutes of limitations and repose periods were tolled based on the fraudulent concealment exception to these statutes.[3] She argues that she sufficiently alleged in her complaint that defendants misrepresented the scientific and medical nature of the psychotherapy given to her and deceived her into therapy and, therefore, a material question of fact existed on this issue. She further argues that she sufficiently alleged that defendants misrepresented that her hypnotically recovered memories were historically accurate, misrepresented that these memories were the cause of her multiple personality disorder, and knew that these misrepresentations would be injurious to her. She also argues that the misrepresentations both created her cause of action and concealed her injuries and this was suf-

---

[3]While Bloom argues the sufficiency of the allegations of her complaint, in portions of her brief, she also appears to argue the merits of her allegations. We only address the sufficiency of the complaint as that is the only issue before this court.

ficient to satisfy the fraudulent concealment exception. She further contends that she was not required to allege that defendants engaged in any acts subsequent to treatment by them because "this" is an exception to the general rule. Specifically, Bloom argues that "[t]he foundation of [her] argument is that the defendants' fraudulent misrepresentations, as to the scientific nature of their therapy, were not only stated to misrepresent the lack of safety or efficacy of their psychiatric treatment or the factual accuracy of recovered memories of SRA/MPD ***, but also served to conceal under [the] same fraudulent umbrella, the injuries defendants inflicted upon the plaintiff." Bloom maintains that the instant case is unusual because the fraud occurred from the beginning; it did not occur, as is usually the case, after the injury.

A joint brief was filed on behalf of defendants Rush, Associated Mental Health Services, and Dr. Braun. Defendant Dr. Schevers filed a separate brief. However, all defendants' arguments are essentially the same. They contend that Bloom was required to allege affirmative acts by defendants that were designed to prevent her from discovering her cause of action, which she failed to do. According to defendants, none of Bloom's complaints alleged that any of the defendants, even during her four-month treatment period by them in the defendant facilities, did anything with the intent to conceal a cause of action from Bloom or prevented her from discovering a cause of action. Defendants contend that Bloom instead alleged that the misrepresentations made during the treatment were sufficient to support her claim of fraudulent concealment. However, according to defendants, this theory has repeatedly been rejected by the Illinois courts. According to defendants, the underlying fraudulent conduct claim cannot invoke the fraudulent concealment exception unless that conduct contained a component specifically intended to lull plaintiff out of suing them.

■ Under the fraudulent concealment doctrine, the statute of limitations will be tolled if the plaintiff pleads and proves that fraud prevented discovery of a cause of action. *Clay v. Kuhl*, 189 Ill. 2d 603, 613, 727 N.E.2d 217 (2000). If the fraudulent concealment doctrine applies, a plaintiff can commence her suit at any time within five years after she discovers she has a cause of action. 735 ILCS 5/13—215 (West 1998). The plaintiff generally must " 'show affirmative acts *** designed to prevent the discovery of the action.' " *Clay*, 189 Ill. 2d at 613, quoting *Hagney v. Lopeman*, 147 Ill. 2d 458, 463, 590 N.E.2d 466 (1992). In other words, a claimant must show "affirmative acts or representations [by a defendant] that are calculated to lull or induce a claimant into delaying filing [her] claim or to prevent a claimant from discovering [her] claim." *Barratt v. Goldberg*, 296 Ill. App. 3d 252,

257, 694 N.E.2d 604 (1998). "Furthermore, the allegedly fraudulent statements or omissions that form the basis of the cause of action may not constitute the fraudulent concealment in the absence of a showing that they tend to conceal the cause of action." *Barratt*, 296 Ill. App. 3d at 257; *Foster v. Plaut*, 252 Ill. App. 3d 692, 699, 625 N.E.2d 198 (1993); *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862, 518 N.E.2d 336 (1987); *Zagar v. Health & Hospitals Governing Comm'n*, 83 Ill. App. 3d 894, 898, 404 N.E.2d 496 (1980). While the acts constituting a fraudulent concealment generally occur after the cause of action has accrued, "they may be concurrent or coincident with it, or even precede it, provided they are of such a nature or character as to operate after the time when the cause of action arose and thereby prevent its discovery, and were so designed and intended." *Keithley v. Mutual Life Insurance Co.*, 271 Ill. 584, 598, 111 N.E. 503 (1916).

In the instant case, the trial court granted defendants' motion to dismiss, concluding there was no contact between Bloom and defendants subsequent to termination of her treatment and, therefore, there were no statements made by them to fraudulently conceal her cause of action or to induce her not to do anything. The court further rejected Bloom's contention that the basis for her cause of action also constituted fraudulent concealment.

Bloom and defendants generally rely on the same cases in support of their arguments that the trial court erred or did not err in granting defendants' motion to dismiss, respectively. In *Foster*, the plaintiff alleged that the defendants negligently misdiagnosed her physical condition (healing of a compression fracture) as schizophrenia and improperly treated her for schizophrenia. When Foster later learned of her true condition, she filed an action against the defendants for medical malpractice. In addition to the above allegation, she apparently alleged that the defendants fraudulently concealed her claim. The trial court dismissed Foster's complaint, finding that there were no well-pled allegations that the defendants intentionally deceived her. The appellate court agreed, finding that the plaintiff's assertions with respect to fraudulent concealment "amount[ed] to mere reiterations of the assertions which form the basis of plaintiff's substantive medical negligence claims." *Foster*, 252 Ill. App. 3d at 700. The *Foster* court concluded, however, that these assertions did not establish that the defendants "made any misrepresentations which they knew to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied." *Foster*, 252 Ill. App. 3d at 700. The court also stated that the assertions failed to demonstrate that the defendants "engaged in any conduct which lulled or induced the plaintiff to delay the filing of [her] claims until after the limitations period had run." *Foster*, 252 Ill. App. 3d at 700.

In *Zagar*, the plaintiff filed a "fraud and malpractice" action against various doctors and the Cook County Hospital. The plaintiff's complaint was dismissed based on her failure to comply with the notice provision of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1971, ch. 85, par. 8—102 (repealed by Pub. Act 84—1431, eff. November 25, 1986)). In seeking to convince the trial court that her action was timely filed, the plaintiff relied upon the fraudulent concealment exception to the statute of limitations relevant to medical malpractice actions. The plaintiff's complaint had alleged:

> "[T]he doctors, knowing plaintiff did not *** suffer from leakage of the mitral value or any other heart ailment, falsely represented to her that she did, and that an operation would show its cause; she was 'induced and coerced to submit to such unnecessary and experimenting surgical operations ***', which were a 'fabrication'; *** [the doctor] also 'perpetrated fraud' upon plaintiff by concealing the facts that she had an ejection murmur and that the X ray showed no evidence of heart ailment." *Zagar*, 83 Ill. App. 3d at 895-96.

In the *Zagar* plaintiff's original complaint, she also alleged that she "was probably used as a guinea pig by the doctors' experimentation." *Zagar*, 83 Ill. App. 3d at 895. According to the *Zagar* court, the gist of the plaintiff's complaint was that the "defendants fraudulently concealed from her the fact that they were using her as a 'human guinea pig' by conducting experiments upon her person without her informed consent, thereby denying her knowledge of when her cause of action accrued and preventing her compliance with the notice requirements of the [Tort Immunity] Act." *Zagar*, 83 Ill. App. 3d at 897. The *Zagar* court noted that the only allegation of fraudulent concealment related to the "doctors' diagnosis of the nature and gravity of [the plaintiff's] illness." *Zagar*, 83 Ill. App. 3d at 898. This was the fraud that formed the basis of the plaintiff's cause of action and there were no additional allegations in the plaintiff's complaint that the defendants intended to conceal her cause of action. Thus, the court concluded that this allegation was insufficient to satisfy the fraudulent concealment exception. *Zagar*, 83 Ill. App. 3d at 898.

■ Here, Bloom clearly did not allege or argue that defendants did anything to conceal her cause of action. Rather, she argued that defendants made misrepresentations that concealed her injuries. She did not allege that the conduct of any of defendants was meant to or intended by them to prevent her from discovering a cause of action. Similarly, she did not allege that defendants' conduct was designed to prevent discovery of her cause of action. She simply did not allege the

component of intent in her complaint. See *Keithley*, 271 Ill. at 598. Nor did Bloom allege that defendants did or said anything to lull or induce her to delay filing her claim until after the statute of limitations had expired. We agree with defendants that the case at bar is similar to *Zagar* and the same result "must be had." We also do not find *Hauk v. Reyes*, 246 Ill. App. 3d 187, 616 N.E.2d 358 (1993), upon which Bloom relies, persuasive because, in *Hauk*, the doctor revised his X-ray interpretation of the nature of the injury to the plaintiff's spine after learning his original diagnosis was wrong, and then backdated the report. The doctor's conduct certainly could be construed as an act to conceal a cause of action, whereas, in the case at bar, we have no such conduct on the part of defendants.

In light of the foregoing, we hold that the trial court properly dismissed Bloom's complaint based on her failure to sufficiently allege allegations to satisfy the requirements of the fraudulent concealment exception to the statute of limitations.

## II. Inability to Discover Injuries

■ Bloom next contends that she was unable to discover her injuries prior to the expiration of the statute of limitations due to her psychological condition. She argues that the statute of repose is tolled if a medically caused injury "mimics a naturally occurring illness or condition" and, based on her condition, she could not discern her injuries because of her serious psychiatric illness and severe depression.

Defendants contend that Bloom waived this issue because she failed to raise it before the trial court. Alternatively, defendants contend that Bloom's argument is meritless because the discovery rule does not apply to the statute of repose. Defendant Schevers further maintains that the discovery rule is not applicable because there is nothing in the record to show that Bloom was unaware of the features of her personality that she now claims are injuries and she was unable to identify any alternative cause of her injuries.

We find that Bloom has waived this issue in failing to allege it in her complaint and to raise and argue it before the trial court. See *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 161, 708 N.E.2d 1122 (1999) (issues raised for the first time on appeal are waived).

## III. Legal Disability

■ Bloom lastly contends that because she was unable to appreciate the fact or nature of her injury due to her diminished mental state and psychiatric disability, the statute of limitations was tolled because of a legal disability. 735 ILCS 5/13—212(c) (West 1998). She urges this

court to follow the definition of legal disability utilized in the Statute on Statutes (Statute) (5 ILCS 70/1.06 (West 1998)). Section 1.06 of the Statute defines a "person under a legal disability" as

> "a person 18 years or older who (a) because of mental deterioration or physical incapacity is not fully able to manage his or her person or estate, or (b) is a person with mental illness or a person with developmental disabilities and who because of his or her mental illness or developmental disability is not fully able to manage his or her person or estate, or (c) because of gambling, idleness, debauchery or excessive use of intoxicants or drugs, so spends or wastes his or her estate as to expose himself or herself or his or her family to want or suffering." 5 ILCS 70/1.06 (West 1998).

Defendants contend that the standard for legal disability is set forth in *Selvy v. Beigel*, 309 Ill. App. 3d 768, 723 N.E.2d 702 (1999), and Bloom cannot meet this standard. Defendants argue that there is ample evidence in the record that Bloom was able to regularly function on her own behalf. Defendants also contend that the Statute's definition is not applicable here. Defendants further argue that other definitions of disability and any findings of disability from other entities, such as the Social Security Administration, are irrelevant because the standards of those entities are different.

We find Bloom's argument unpersuasive. In *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 687 N.E.2d 1014 (1997), our supreme court rejected an argument similar to Bloom's. In *Bruso*, one of the defendants' arguments was that the Statute's definition of legal disability applied to the definition of legal disability for purposes of section 13—212(c). The *Bruso* court rejected this argument. First, it found that to apply the section 1.06 definition to section 13—212 would be inconsistent with the legislative intent to protect the rights of those who are not competent to do so for themselves. Second, the *Bruso* court found that applying such a definition could be repugnant to the context of section 13—212 because the Statute's definition identifies several bases, including idleness and debauchery, as " 'legal disability.' " *Bruso*, 178 Ill. 2d at 456, quoting 5 ILCS 70/1.06(c) (West 1998). The *Bruso* court concluded that the legislature certainly did not intend to include "idleness" and "debauchery" as a legal disability that would toll the medical malpractice statute of limitations. *Bruso*, 178 Ill. 2d at 457. Thus, the *Bruso* court disagreed with the defendants' contention that the Statute's definition must be used to define "legal disability" for purposes of section 13—212(c). *Bruso*, 178 Ill. 2d at 456.

Instead, according to *Selvy*, to be under a legal disability, "a person must be 'entirely without understanding or capacity to make or com-

municate decisions regarding his person *and* totally unable to manage his estate or financial affairs.' " (Emphasis in original.) *Selvy*, 309 Ill. App. 3d at 776, quoting *Sille v. McCann Construction Specialities Co.*, 265 Ill. App. 3d 1051, 1055, 638 N.E.2d 676, 679 (1994). See also *In re Doe*, 301 Ill. App. 3d 123, 126, 703 N.E.2d 413 (1998). Additionally, one is legally disabled if he or she " 'was incapable of managing [his or] her person or property and could not comprehend [his or] her rights or the nature of the act giving rise to [his or] her cause of action.' " *Sille*, 265 Ill. App. 3d at 1054, quoting *Tardi v. Henry*, 212 Ill. App. 3d 1027, 1040-41, 571 N.E.2d 1020 (1991). The record must contain sufficient factual allegations from which one could conclude the individual seeking to be found legally disabled fell within one of these definitions. *Doe*, 301 Ill. App. 3d at 127.

In *Doe*, the court concluded that the record contradicted the plaintiff's contention that he was legally disabled because during the time of the alleged disability he graduated from college, sought medical treatment, and enrolled in a master's degree program. *Doe*, 301 Ill. App. 3d at 127. The same findings were made in *Sille*, where the court stated that during the time of the plaintiff's alleged disability he was able to run his own business and operate construction machinery. *Sille*, 265 Ill. App. 3d at 1055. Further, both *Doe* and *Sille* rejected arguments that disability under another statute constitutes a legal disability for purposes of section 13—212. *Doe*, 301 Ill. App. 3d at 127; *Sille*, 265 Ill. App. 3d at 1055.

As in *Doe* and *Sille*, the record in the instant case belies Bloom's contention of legal disability. During the time between her last treatment by defendants and the time she filed her complaint, she sought mental treatment by two different psychiatrists, Dr. Zicarelli from May 1994 to October 1994 and Dr. Sunn from August 1996 to January 1998, and treatment by a psychologist, Dr. Frischholz from September 1997, apparently through the time of hearing on defendants' motion to dismiss. Similarly, Bloom was employed in various jobs consistently from June 1985 until April 1997, with the exception of the period between March and September 1996. While the record shows she did suffer some psychiatric problems at work, including panic attacks, crying, emotional highs and lows, and an angry attitude, it still remains a fact that Bloom was able to work. In fact, the job she held from the time of treatment until April 1993 involved extensive duties, including hiring and firing, payroll and bookkeeping, ordering and receiving stock, opening and closing the store, and designing product displays. Further, the record shows that she was a fiduciary representative for the company. Lastly, from 1991 until 1997, Bloom lived with various individuals, including boyfriends, and contributed to rental or mortgage payments, utilities, and living expenses.

These accomplishments are not those of someone entirely without capacity to make decisions regarding her person, totally unable to manage her financial affairs, or unable to comprehend the nature of the act giving rise to her cause of action. While we note Bloom was declared psychiatrically disabled by the Social Security Administration in December 1997, retroactive to March 1997, this declaration does not render her legally disabled for purposes of section 13—212. See *Doe*, 301 Ill. App. 3d at 127; *Sille*, 265 Ill. App. 3d at 1055.

In light of the foregoing, we conclude that the trial court properly dismissed Bloom's complaint based on her failure to satisfy the requirements of the legal disability exception to the statute of limitations.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HALL, P.J., and WOLFSON, J., concur.